Ruffin, Chief Justice,
 

 after stating the pleadings and proofs as above set forth, proceeded as follows: — The object of the original bill is to set up the.contract between the defendant and Joseph Wier; and, on the footing of it, to have a decree for a conveyance from the defendant of the title derived by the defendant under the deed made by Coulter. The equity is founded on'the existence and validity of the alleged contract, and the destruction or suppression of it by the defendant, with or without the privity of Joseph Wier, with the intent to defeat the claim of the state on the forfeited recognizance, and to the prejudice of the plaintiff’s rights as a purchaser under the state’s execution.
 

 In the case supposed by the bill, there can be little hesitation in pronouncing the equity asserted by it, to be sound.
 

 The answer admits the facts, upon'which the plaintiff’s title rests, respecting the recognizance and the proceedings upon it, to be true, as stated in the bill; although the answer does not raise the question, nor was it brought forward in the argument, yet the Court does not think it proper to overlook the doubt that might be stated, whether Joseph Wier had such an interest as could be affected by the lien and be sold under the execution. The Court is of opinion that he had.
 

 We think it clear, that the interest of a purchaser at sheriff’s sale, who has paid his money, but not taken a deed, is a trust estate, within the act of 1812. The whole
 
 *138
 
 equitable interest is in him, and he has a right to call for a conveyance to himself at any moment. Such an estate it is the policy of that statute to make available to the owner’s creditors. The purview of the act is to treat the keeping of the legal estate, by a debtor, out of himself, and in a trustee for him, and for him alone, as a fraud upon his creditors. It is therefore to receive a construction, liberal and beneficial to creditors, by extending it to every case in which the legal estate is a naked one, and the whole beneficial interest is in the party or parties against whom execution is sued. As there is no third party in interest, there is no possibility of injury to' any one. Although a purchaser at sheriff’s sale of the estate of a former purchaser at a like sale, gets, by force of the act, a legal title, by the deed, simply, of his immediate vendor, without any deed from the sheriff who first sold, yet that is the effect of the express words of the statute, and is a consequence which furnishes no just argument for a construction, which would take a case out of it, that falls both within its words and policy. Probably the cases immediately in the contemplation of the legislature were trusts, honest in their creation, and plainly expressed in the deed by which the trustee gained his estate. In that case the rights of the
 
 cestui que trust
 
 and trustee both appearing on the same instrument, the latter could not assert his title, without showing that of the former. As that would be the whole beneficial interest, and be at all times obviously seen, the sale of it might well be treated as the sale of the land itself as against the trustee. But the act is not confined to such express trusts, in its words. The phraseology extends it to all cases in which any other person is in any manner or wise seised in trust for him or them against whom execution is sued; and thus includes the cases of a declaration of trust by a separate and subsequent instrument; of a sale by articles where the vendee has paid the purchase-money and done all the acts on his part to be performed; and of resulting trusts, where the purchase-money is paid by one person and the deed executed to another, and the like. These cases are within the mischief against which the act provides, as well as
 
 *139
 
 within the letter of the law; and an execution runs against the estate of the owner of the entire, valuable interest, without injury to others, and with as little prejudice to his own, as in the case of express trusts. They may, indeed, present difficulties to the purchaser in respect of getting evidence at law to establish the trust, and also in showing it to be of that clear and explicit kind, on which alone, perhaps, a Court of law would be inclined to act, without resorting to the implication of it, from refined equities. But those difficulties do not prevent the estate of such a
 
 cestui que trust
 
 from being seized and sold on execution, though they may render it necessary that the purchaser-should come into a Court of Equity for the discovery, declaration, and establishment of the trust, and of a permanent evidence of it, on which his legal title depends. To that end there would seem to be a jurisdiction here to decree a conveyance from the trustee, where the trust is not express, as the most simple, durable, and permanent muniment of title — one which the trustee, after the establishment of the trust, and the purchaser’s ownership of it, could not, in good conscience, refuse to give, We need not embarrass this inquiry with the difficulty a technical kind, whether the sheriff who sold under the first execution, or the defendant in that execution, be the trustee. The legal estate is in neither, after a sale of the land for the debt of the
 
 cestui que trust.
 
 The object is not to get the legal estate, but to get legal and accessible evidence of it. If the deed of Coulter, therefore, be not indispensable to the legal estate, it is convenient, necessary and proper, and, indeed, the only means known to the law to establish conclusively at law in respect of land, that the first- sale was in fact made and the purchase 1 money paid. Had not Coulter made a deed to the defendant, and would not make one to a second purchaser, qualified to demand it, by having a deed from the sheriff, who was his immediate vendor, it seems to us, that the purchaser would be entitled to a decree- for such a convey-anee, as a link in a clear paper title. Here he has made a deed to the defendant, which was executed before the plaintiff purchased, and therefore, apparently, at least,
 
 *140
 
 vests the legal title in the defendant. Whether there is a jurisdiction in the Court of Equity to decree a conveyance by a purchaser at sheriff’s sale, who gets his deed from the sheriff after the land so purchased by him had been sold under an execution against himself, it is unnecessary to say. It is not easy, in ordinary cases, to see the utility of a deed from the first to the second purchaser under such circumstances.
 

 
 *138
 
 Thai act extends to ail cases where the whole beneficial interest is in the defendant in the execution, as well when it is created by deed,as where it results from construction of law.
 

 
 *139
 
 And when construe *S tive, a Equity will “d the pur-directing trustee to him.
 

 And if the ^ectfto6" make a purchaser^ °"e w^° latter’s in-tfrestun-der another execution ty call upon the sheriff thePevi-Ct b?n°.®j0fb executing7 jjeed to^the dee.
 

 
 *140
 
 But in the present case, the jurisdiction rests on other grounds. The defendant has the apparent legal title, and the plaintiff is in possession. The plaintiff does not claim under an execution against this defendant, but against another person, to whom, it is alleged, the defendant sold the land. That contract of sale is disputed, and the defendant is charged with its spoliation or suppression. The plaintiff comes to establish those facts and bring in possession, supposing it to be on a legal title — to be protected against a deed taken by the defendant in fraud of the contract made by him with Joseph Wier, and of the title now vested in the plaintiff, under which he may be harassed at law from time to time. In such a case, the jurisdiction to give relief by calling in the deed or decreeing a conveyance, is as clear, we think, as that for establishing the contract of sale to Joseph Wier.
 

 If a purchaser of the defendant’s interest, under execution, could have called on Coulter, in equity, for a deed, so may a purchaser of the land, at execution sale, as the property of the defendant’s assignee. If the defendant assigned his interest absolutely, to Joseph Wier, and received the consideration money, so that, as between themselves, the defendant had no valuable interest in the land, it was liable to Wier’s creditors, upon the same principles upon which, before the assignment, it would have been liable to the defendant’s. Wier was then the sole
 
 cestui que trust;
 
 and the Court cannot, in executing a statute for the benefit of creditors, stop at the first use, as was done with respect to the st. 27 Hen. 8, and thus put it in the power of debtors to render ineffectual a remedial law, and elude their creditors.
 

 The decision, then, must depend upon the merit's of the
 
 *141
 
 case, as shown by the proofs; whether there was a contract between the defendant and Joseph Wier, whereby the equitable title of the lands became vested in the latter, and so continued, in respect of his creditors, up to the day on which he acknowledged his debt to the state.
 

 In considering the case, the Court is relieved from any difficulty that might be raised, on the statute of frauds, either as invalidating a parol contract between the defendant and Joseph Wier, or in precluding the defendant from insisting on the statute at the hearing, because it is not relied on in the pleadings. The bill is understood as charging the specific agreement, on which the relief is sought, as a written agreement; although it also charges many parol declarations. Those declarations are charged to be of such a nature, as presuppose a written contract, or are consistent with the existence of such an one. The defendant could not, therefore, have availed himself of the statute; and the Court, upon these pleadings, can only regard the evidence of such declarations as refer to a written instrument, as being proof of its existence, and must treat the rest as merely tending to sustain the credit of the witnesses who depose to such an instrument.
 

 The answer denies directly and peremptorily, more than once, thp agreement charged in the bill. It is apart of the law of evidence in this Court, that such a denial is a bar to relief, unless disproved by two witnesses, or by one and such collateral circumstances in corroboration, as show that the single witness'is credible, and has, in fact, deposed to the truth in the particular case before the Court. But if there be two witnesses, or only one, and he sustained by incidental circumstances, clearly established, which leave no fair doubt in the Judge’s mind, that the witness has, in fact, told the truth, then there is evidence which preponderates; and the most positive and unequivocal statement of the answer — coming, as it does, from an interested person — must yield to the opposing depositions of the disintei’ested witnesses or witness. The Court is then bound to determine Recording to the actual convictions produced by all the testimony and circumstances, taken together.
 

 
 *142
 
 Of the existence of a written instrument in this case, whereby the defendant sold and conveyed the land in dispute, or assigned his interest in it, in 1822, to Joseph Wier, there is direct evidence given by Michael Goodson, who deposes, that he heard the defendant read it to Wier, and that he attested its execution. He does not profess to give its contents, but in those general terms; nor does he state, whether it was in form a deed, or not; nor the consideration expressed in it; nor that upon which it was, in fact, founded. This is a single witness to the fact of its execution, and the only one, also, who speaks of its contents, from personal knowledge.
 

 If the effect to be given to the testimony of this witness depended entirely upon his credit, estimated by the evidence to character, on the one hand, and on the other, by that of his consistent declarations to the two Greens, it might not be deemed safe, by any tribunal, to found an adjudication on it. Those declarations raise a presumption, that he may have spoken the truth in his deposition. But that, at most, only rebuts the contrary inference from bad character. Something more is necessary — something in the admissions of the defendant, of his veracity, in this particular instance, or of such other acts of the defendant as are consistent wdth the narrative of the witness, and inconsistent with its falsehood. If other witnesses had seen the deed, for instance, or if the defendant were to declare expressly, that he made such a deed and such declarations were clearly proved; such evidence would satisfy the rule of this Court, and ought to satisfy every Court; because no better proof of a lost or suppressed writing can be made.
 

 Here, looking at the proofs judicially, and without any knowledge of the parties or witnesses, the Court cannot but say, that the requisite additional evidence abounds.
 

 To the witness Gladden, the defendant made such declarations, under circumstances that rendered them peculiarly impressive on the witness, and gave them great weight with the Court. With the paper in his hand, he declared it to be a release from himself to Joseph Wier, for the Home-place, which he had then lately bought as the
 
 *143
 
 property of Joseph Wier. The witness did not read the instrument, nor does he say, that the defendant read it to him. But he states what is tantamount. The defendant professed to know the paper perfectly, as
 
 soon as
 
 he saw it, saying, that he'had' himself written it: he had it then-before him, and claimed title under it, as by it those lands became vested in Joseph Wier. This witness is unim-peached, and is, indeed, the defendant’s own witness. His testimony establishes the written contract charged in the bill, independent of Goodson’s evidence, and consequently sustains the credit and veracity of that witness. He also proves, that the defendant had the paper in his custody, in December, 1826, and then set up title under it. The defendant suggests, that the paper of which he spoke, was a release for the other two tracts: and that, as Gladden did not see it, he might be mistaken as to its nature.. But the witness is positive as to the defendant’s words, that it was a release for the Home-place. Besides that, he says, that, from the colloquium, that tract must have been referred to, and no other. Under the paper then spoken of, the witness, according to his understanding of its contents, as represented by the defendant, inferred, that Joseph Wier could have successfully defended the suit brought by his father against him for the land which the defendant had bought as Joseph’s and that inference was expressly sanctioned by the defendant. Now, although Robert Wier claimed in his bill, both the Home tract and that on Muddy Fork, yet the defendant had not purchased the latter tract as Joseph’s: he then set up no claim to that tract, and it is not embraced in his -deed from the sheriff. That deed conveys only the Home-place, or what the defendant claimed as the Home-place. The release must therefore have extended to that, and to that only. Indeed, the only claim then asserted by the defendant to the Home place, was by virtue of the purchase of it as Joseph’s; and for that reason, it then concerned the defendant to establish Joseph’s title to it to be good. The Home-place was sold under the execution of Fullenwider and others, but not the other tracts. The defendant does not rely on nor state that title in his answer; probably,
 
 *144
 
 because he has discovered, that those judgments were posterior to the recognizance. But during the survey, he claimed only under the execution sale of Joseph; which explains why the tract of two hundred and thirty-three acres, which had been granted to Joseph, was included in •that survey, and in the deed which Cansler made on the 10th March, 1827: that the defendant then asserted that claim only, is sworn to by Gladden, by Mrs. Wier, and strongly by Cansler; and is to be inferred from a document exhibited by the defendant, which is more to be •relied on than the recollection of all the witnesses. The defendant purchased the land as Joseph’s on the 23d of October, 1826; on the same day Wilson purchased the same land as Robert’s. After the survey, and so immediately after it, that every thing must have been fresh in memory, the defendant purchased from Wilson, and took the instruments of the 19th of January, 1827, in which Wilson transfers to the defendant his right to
 
 “
 
 the eight hundred acre tract on Buffalo, where Robert Wier now lives, and where Joseph Wier did live, which Colonel Hoke
 
 now
 
 claims as the property of
 
 Joseph
 
 Wier, under a purchase made in October last, at sheriff’s sale.” It is not easy, with this document before us, and with the concurring testimony of so many witnesses, to admit a possible doubt, that the defendant’s only claim to the Home-place was then under Joseph; and that the release to Joseph, which he then had in his hands, was not for the Home-place, and no other. Mr. Cansler states, that during the survey, the defendant, in reference to the same suit, between Robert and Joseph, insisted, that the title of the latter was good, by means of the defendant’s own transfer to him of his father’s right; and that, consequently, the defendant’s title to the same lands, under Joseph, must also be good. He traced his title to each witness in the same way; and the only difference between his statements to them, respectively, is, that he left the one infer, naturally, that his transfer was in writing, and the other he expressly stated that fact, and actually • showed him the paper, which he said was the deed. The defendant insists, that there was no release, because it was
 
 *145
 
 not seen by Cansler, through whom, the answer states, the defendant derived the possession of Joseph Wier’s papers. But that fact, from which the inference is deduced, is contradicted by the witnesses. Cansler and Mrs. Wier prove, that she delivered the deeds to the defendant himself, when they began the survey; and Gladden proves, that the defendant had them during the survey,, at his house, in the absence of Cansler. No doubt, Cansler used such deeds as were useful for the purposes of discovering the lines, and afterwards returned those to the defendant. It is not probable, that the defendant would deliver to him any deed or paper that was not necessary for that purpose. Hence Cansler does not seem to have seen any release whatever; though the defendant admits that one for the Suck Fork land was among the papers.
 

 If to this direct evidence of the existence of the instrument, be added the general conversations with Mr. Williamson and Mr. Wilson, to the latter of whom, the defendant pointed particularly to the residence of the Wiers; the testimony of John Wier, that in a short time after the defendant purchased, he told the witness, that on that very day he had transferred this land to his brother; the testimony of Coulter to repeated declarations to that effect, both by the defendant and Joseph Wier; and, superadded, the admitted fact, that although the defendant took his deed from Cansler, under the sale of October, 1826, on the 10th of March, 1827, he yet took the deed from Coulter under his purchase of October, 1822, on the 26th of April, 1827, and never applied for it until that day, when the state was taking judgment against Joseph Wier, under which the land of Joseph Wier might be sold. The direct testimony is so entirely corroborated as to establish conclusions, not to be refuted by the denials or explanations of the answer, upon any just principle for weighing evidence by a judicial or other mind.
 

 Upon it the Court must declare, that the written agreement, between the defendant and Joseph Wier, for the Home-place, purchased by the defendant, in October, 1822, must be established, as the same is charged in the bill; and that it afterwards came into the hands of the
 
 *146
 
 defendant himself. It follows, as the defendant refuses to produce it, and denies that it ever existed, that the defendant must be held to have suppressed or destroyed it.
 

 It is probable, that Joseph Wier voluntarily surrendered the instrument, and concurred in the purpose of suppressing it. The motive of each of those persons for the act is obvious enough. Until the state was about to take judgment on the recognizance, in April, 1827, the defendant was not aware, that his title under Joseph could be invalid, and therefore asserted that, and that alone, to be his title. But when the lien of the recognizance was discovered, it then became important, that the defendant should make out a title, without deducing it through Joseph. To the latter, it was immaterial, as he was to lose the land, at all events, whether the defendant or the state held it. But his wife proves a circumstance, calculated to produce in his mind a strong bias towards the defendant. She says, the defendant informed her, that if her husband should get clear, he would let him have the land again, as he had once before done; and, at all events, if he held the land, he would not do so at the price he had given, but would make satisfaction to herself and the children. In this state of the affair, the defendant applied to Coulter for the deed, and Joseph Wier consented to the execution of it, although he had, but a short time before, asked the sheriff to make the deed to himself. The rescinding the contract, (if it can be called rescinding,) without consideration, and under such circumstances, would be manifestly in fraud of the state; and would, in this case, be altogether inoperative, as the recognizance constituted a lien which would render a
 
 bona fide
 
 sale by Wier void. Whether the defendant has destroyed or withholds the contract, with or without the privity of Wier, is not, therefore, material. It is sufficient, if it be suppressed, without regard to the intent of that act.
 

 It is insisted, however, that there is no proof, more than an executory agreement, which is not binding, unless there was a valuable consideration, of which there is no sufficient evidence.
 

 If this were an ordinary bill for specific performance,
 
 *147
 
 and depended solely upon the sufficiency of the consideration to make the agreement effectual against the defendant as the contracting party merely, and without reference to his claim under Wilson, we think the evidence fully sufficient. It is unquestionable, that the defendant, about the period of the transaction, received the slave Anthony from Joseph Wier. The defendant admits, that he first took him in pledge for some debt, and afterwards, in March, 1825, took an absolute bill of sale in satisfaction of the same debt. The debt is stated in the answers to have been for the prices of the two other tracts of land, and the balance due on a bond, for three hundred and twenty-one dollars and thirty-seven and a half cents, on which one hundred and forty-five dollars had been paid: that is, three hundred and ninety-two dollars and thirty-seven and a half cents, without any previous interest. But the bill of sale states the consideration to be the precise sum of three hundred and twenty-one dollars and thirty-seven and a half cents, the amount of the bond without deduction, though one hundred and forty-five dollars had been paid on it. The account of the defendant of the manner of paying for the slave is therefore altogether unsatisfactory. But that bond cannot be taken for granted, without some proof; and there is no proof of its existence, nor of any debt from Joseph Wier to the defendant, nor of any dealings between them, except for the lands; and the balance due for all the lands, after a payment of one hundred and forty-five dollars, would be two hundred and eighty-two dollars; which, with the accruing interest, may have constituted the debt of three hundred and twenty-one dollars and thirty-seven and a half cents. This is consistent with the testimony of the witnesses. Mrs. Wier says, that the negro was a payment for the Home-place; Mr. Williamson, that he understood him to be a payment or security for the money due for all the land; and John Wier, that, at the day of the contract, he understood from the defendant, that his brother had.
 
 settled
 
 for the Home-place. This is affirmative evidence of some satisfactory price in general terms; though as>to the particulars, it is not precise. But the
 
 *148
 
 want of precision is fully supplied by another fact, already found upon the evidence. The defendant stands before the Court upon this part of the case, as a spoliator, against whom everything, that may be presumed, is to be presumed. Although the consideration need not be expressed in the agreement, it is generally expressed, and must be supposed to have been in this. The contrary not being shown by the defendant, it is,a presumption of fact from the course of business between man and man, and from the admitted dealings between the parties, that Joseph Wier reimbursed or secured the money advanced by the defendant: otherwise, the defendant would neither have released nor authorised the sheriff to convey immediately to Joseph Wier, but would have retained the title as a security.
 

 Everything is to be presumed against a spoliator.
 

 But it is urged in argument, that, if the slave was the price of the land, he was not the property of Joseph, but of Robert Wier, and that the defendant derived a good title to him under the latter.
 

 That, if true, could not affect the contract, for the defendant paid nothing to Robert, who, as between them, may have voluntarily made good his son’s contract. The defendant has not been disturbed in his enjoyment.
 

 It is said, however, that in law, the purchase of the land enured to Robert, whose slave went to pay for it; at least, in respect of Robert’s creditor’s. And it is contended, that the land was consequently liable to Wilson’s execution.
 

 It might be questioned, whether the defendant can be allowed that argument. It is inconsistent with his own answer; in which he affirms, that the slave was not the price of this land, but the payment for other debts.
 

 But yielding the position, that the negro was the price, it is not perceived, how it can help the defendant. It is admitted, that the deed of 1809 was fraudulent, and that the land was liable to Robert Wier’s creditors. But it was once sold for his debt in October, 1822, and bought by the defendant. It could not be sold again by another creditor, unless Robert reacquired it. That the defendant’s counsel insists he did, because the slave belonged to him.
 

 
 *149
 
 If one buys p0nr Another, withihe Jheiatter,a tr“st r®suits for him; but it ls.oth.er-buys for money of consentof another.
 

 And if one, his credi. tors>con-pertyPto° 3t,h®5 ‡1 tne iRtter s use, a trust gervedVy' the latter change for Pr°-nofresult to *^e *r" ther’can ^subject it at law to debts!^ 13
 

 If one person buys an estate for another, and with his money, the trust certainly results to him who advances the price. But this is not a case of that sort. There is no evidence that Joseph bought for his father. It is not even alleged in the father’s bill against the son, which sets up a different title to the land; and all the witnesses prove, that this defendant stated, Joseph, and not Robert, to be the person to whom and for whose benefit he trans-
 
 r .
 
 , , , " terred the land. - ■
 

 But what is the proof that the slave belonged to Robert, and not to Joseph ? The allegations of the father’s bill and the proceedings on it are not evidence against the parties to this suit, unless the defendant has made them so, as against himself, by taking a subsequent release of the slave from Robert. But if they were,- that bill states Anthony to have been a part of the joint property of Robert, and Joseph, and that the-latter had sold him ; and the bill claims that he shall be considered a part of the son’s share, and thus affirms the sale.
 

 If the negro is to be regarded simply as a part of the property fraudulently conveyed in 1809, then he was not the property of the father, in the sense now insisted on. As between the father and son, he belonged to the son. As against the father’s creditors, he remained the father’s. . The donor’s creditors can resort to the property fraudulently conveyed. That, and not what he got in exchange for it, -by the donee, is the fund for the satisfaction of the creditor. If a debtor conveys property upon a secret trust for himself, and to the intent that the donee •change its character and invest it in other- property, doubtless, the fund, of whatever it may consist, may be reached in equity; for the donee is but the donor’s agent and trustee, and the purchase is made for the donor. But when the conveyance is made to the intent that the donee ■shall have the estate, and he asserts his title, both against the donor and his creditors, and -deals with the property as his own, and with a part of it buys an estate, the creditor cannot take that estate at law; for that would be to •give the creditor both the thing fraudulently conveyed and that exchanged for it. If Joseph’s title to the negro
 
 *150
 
 was not good under1 the deed of 1809, Wilson’s remedy was, in this aspect of the case, against the negro, and not against the land. Joseph’s title to the land was derived from this defendant; and as against Robert Wier' and his creditors, the defendant’s transfer was equally good, with or without a consideration moving from Joseph.
 

 Where the plaintiff in equity-seeks to affect the legal estate of the defendant with a trust for him, and the defendant sets up, as a de-fence, a distinct title in the same land, the Court, having decided that the plaintiff lias an equity as to the first title, necessarily must determine which of them is the 5)est.
 

 There was therefore no trust for Robert Wier in this land, which rendered it subject to Wilson’s execution; and no estate was acquired under his sale, even if he, a creditor in 1826, could impeach the deed of 1809.
 

 It may be said, that the question upon that title, is a legal question, and ought not to be decided here. That would be true, if the object of the bill was to try that question. But it is not. The plaintiff seeks a discovery and declaration of a trust attached to the title derived under Coulter’s deed, which is apparently the legal title. It is the defendant who brings forward the deed from Cansler as a bar to the relief by a decree for a conveyance. To every bill to enforce a trust the owner of the legal title must be a party; and so far the Court of Equity must judge of it and determine in whom it is. If the plaintiff relies on his title as a legal title, then his relief is at law; but if he establishes a trust, and attaches it to a particular estate, apparently vested in the defendant under a conveyance which purports to convey a legal title, it will be different. The subject is then, one of equitable jurisdiction, and the Court must see which is the legal title, in order to determine whether the trust can be supported, as arising out of it, or must fail, as arising out of a defective legal title. This case furnishes an example of both sorts. The defendant included in this deed from Coulter two hundred and thirty-three acres of land which never had belonged to Robert Wier, but belonged to Joseph, under whom the plaintiff purchased and took a deed. Again, the plaintiff alleges, that Wilson bought both tracts at once, and therefore, that the sheriff’s deed is void. Now those are questions purely at law, and do not fall within the cognizance of this Court. The plaintiff does not seek relief in respect of the two hundred and thirty-three acres, because he has a trust, and the defendant the legal title; but he seeks to set aside that deed, because it did
 
 *151
 
 Slot convey the legal title. But in respect of the Home-place, the relief sought by the plaintiff is upon equitable grounds; which entitle him to a conveyance from the defendant, if the estate on which his equity attaches be that on which the defendant would hold the land in the judgment of a Court of law. If that were the only estate claimed_by the defendant, the relief would be undoubted. We think he cannot defeat it by merely taking another deed from a stranger. He may bring forward another title, and if it be the true and better title, the relief may be defeated; because the alleged trust did not arise out of it, and it may be, cannot be made to attach to it through the fiduciary character of'the defendant. But if a party defendant does bring forward such a title for this purpose, he must not expect it to be a bar to an equity, unless it be truly a distinct, good, legal title. That point must be determined in the cause, before the plaintiff can be turned out of Court. In England, it is probable, that it would be sent to law upon an issue or a case; but that would be by an order in the cause, and because the Chancellor does not choose to encumber himself with a question, on which he can get advice from those within whose province it more particularly falls. In this State that practice has never prevailed, and would be ridiculous, as the same persons are the Judges in both Courts. As it is clear, therefore, upon the pleadings and evidence, that the sale under. Wilson’s execution passed nothing, the title set up by the the defendant under it cannot stand in the way of the plaintiff’s relief.
 

 There must be a decree for the plaintiff, that the defendant convey to him in fee, with special warranty against himself, and those claiming by, through, or under him, by deed to be approved by the Master, all the lands (except the tract of two hundred and thirty-three acres, mentioned in the pleadings as having been granted to Joseph Wier,) which were conveyed by the sheriff Coulter to the defendant, and which were also conveyed to the plaintiff by the sheriff Cansler, as in the pleadings mentioned, and stated in the deeds of Coulter and Cansler, which are exhibited; and that the defendant pay the costs.