Ruffin, C. J.
 

 The court is of opinion, that the objection to the admissibility of the paper, said to be a copy of the tax list for 1836, ought to have been sustained. It was not sufficiently authenticated. It was not a sW6rn copy, as the sheriff did not pretend to have compared it with the original, nor was the clerk called to that point. Indeed, it may be doubted, whether an authentication in that way would suffice, and whether it must not be by the certificate of the clerk on the transcript, attested by his signature, as in other transcripts of records. For, as has been said several times, the tax list is the warrant of the sheriff to collect taxes.
 
 Slade
 
 v.
 
 The Governor,
 
 3 Dev. 365. The list ought to be so authenticated, as not only to satisfy the sheriff that it is a copy of the original, but also appear, upon inspection, to the citizens, to be official evidence of their liability. It is true, they may ascertain their liability by going ÍC the clerk’s office ; but that was not intended by the legislature, as it is inconvenient and ex
 
 *132
 
 pensive, and it was meant, that when the tax is demanded, the sheriff should show by a document, purporting to be authentic, and to be a copy of the recorded list, on what property the tax is laid, and the amount of it. Hence, the clerk is required to
 
 record
 
 in alphabetical order, the annual returns; and by the acts of 1819 and 1822, Rev. Stat. ch. 102, sec. 41, to deliver to the sheriff a fair and accurate
 
 copy
 
 of the returns in alphabetical order, designating in such copy the separate amount of taxes, accruing from each species of property, and extending the aggregate amount due from each individual. It would seem of necessity, that a mere copy of the list, not purporting to state what it is, nor whence it comes, nor by whom made, would not answer the purposes intended
 
 by the
 
 legislature, but that the nature of the document should be stated under the hand of the clerk, at least. But, at all events, it was insufficient here, as it was not authenticated, either by the certificate of the clerk, or by the oath of a witness, as a copy; nothing more appearing, but that the clerk delivered the book to the sheriff and said it was a copy.
 

 We likewise think the Superior Court erred, in
 
 letting the
 
 testimony of the sheriff go to the jury to establish the contents of the tax list of 1835, and that the error was not corrected by the instructions given to the jury upon the point. The question is not on the sufficiency of evidence, but on the competency of secondary evidence as to the contents of a written document, and is to be decided exclusively by the court. By the act of 1791, Rev. Stat. c. 102, sec. 45, the sheriff is to collect the public tax from every person, whether mentioned in the tax list furnished by the clerk or not, and one, who has not given in his property, is made liable to pay double the tax he would have been liable for, if his property had been given in at the proper time ; and if any dispute should arise as to the amount of the tax for which any person may be thus liable) " ‘be napers and records in the clerk’s office shall be held and •
 
 i: rl
 
 r¡;,, :t7 or the part of the sheriff te-:”~ti-tletnmtu1 ■<
 
 ;■
 
 ,, preceding given in a list of his taxable property.” By the
 
 *133
 
 same act, and by that of 1819, the sheriff may also have the land valued by a freeholder, but it is not material to consider that, as nothing of the kind was done here. It was therefore indispensable to prove the assessment on the lot in 1835; and the question is, whether enough was shown to let in parol evidence of the contents of the tax list of that year. Now it is incumbent on one, who wishes to be let into such evidence, to show affirmatively, and not dubiously, or as a conjecture of the witness, that the document itself is destroyed ; for if it be in existence and not suppressed by the opposite party, the paper itself must be produced, and the want of it cannot be supplied. It is obvious, that if the witness is entirely uncertain, whether the document, which he saw, and of which he is offered to prove the contents, was a certain paper, which has been destroyed, or was a certain, other paper, which has not been destroyed, he fails to establish the very
 
 substratum,
 
 on which the admissibility of the parol proof depends, namely, the loss or destruction of the instrument. It will not do to refer that question to the jury, for the law requires the court to decide on the competency of the evidence, lest the jury should be misled by a tale too easily fabricated to be entitled rationally to the confidence necessary to found a judicial decision. It is always a question of law, whether the best evidence in the party’s power and of wHch the nature of the case admits, has been produced, and inferior evidence is not admissible. If, in this case, the sheriff’s copy of the tax list had been offered, it would have been competent, as there was sufficient proof of the destruction of the original. So, if it had appeared that the sheriff’s copy had also been lost, then the parol evidence might have been given, since the paper of which the contents were proved, was certainly lost, whether it was that in the clerk’s office, or that in the sheriff’s office. But, as the sheriff’s copy is yet in existence, for any thing we see to the contrary, and that might have been the paper which -heriff saw in 1837, he could not speak of its contents, be-ffiey would best appear from the paper itself.
 

 The next objection, the courtIhiñks- still more fatal to the
 
 *134
 
 plaintiff’s title, since it is our opinion that the court ought to have given the instruction prayed by the defendant. The act of 1819, Rev. Stat. ch. 102, sec. 52, requires that the sheriff shall, at the term of the County Court next preceding the day of sale of land for taxes, return a list of the land upon which the taxes are unpaid, and which he purposes to sell for taxes, therein mentioning the owners of each parcel, and if the owner be unknown, the name of the last reputed owner, and the amount of the tax due thereon; and that the list shall be read aloud in open court, recorded by the clerk upon the minutes of the court, and that a copy shall be set up by the clerk during the term, in the court-room. It seems to us that this provision is not merely- directory, but that it is to be observed by the sheriff as a part of his duty, and as far as making of the return and having it recorded, it is essential to his authority to sell the land. It was known, that notice by advertisement was a very uncertain method of informing the owner, and especially of unlisted property, that his land was to be sold; and, moreover, that, on account of the difficulty of a purchaser proving due advertisement at remote periods, and of the necessity, nevertheless, of supporting fair purchases, the courts had held that sales made without advertisement and without the knowledge of the owner, should stand, notwithstanding the prejudice that might arise to the owner. The intention of the act of 1819 was, to provide a more certain or probable notice to the owner of the intended sale of his land, and of the reason therefor, by requiring it to be given in open court at the term next preceding the sale, .and to be recorded, so
 
 that
 
 the rumor thereof, at least, might reach him, and that, upon investigation, he might find at a known place a permanent and certain evidence of the truth of the matter. So, too, the bidders cannot be deceived by any false representations, as they can respecting advertisements in the country or in a newspaper, as the evidence is of record and at home, and if they choose to look they must know, whether the sheriff has d his duty by the owner or not^, if "he has riot, his salé not to pass the title,-inaíé” than if it were by private contract.
 
 oimm
 
 ntract, ~
 
 *135
 
 or was not made at the court house, or on a wrong day of the week; in all which cases, the wrongful conduct of the officer
 
 must
 
 be known to the bidder, and therefore his purchase ought not to stand.
 
 Mordecai
 
 v.
 
 Speight,
 
 3 Dev. 428. Indeed, the proceeding, directed by the act of 1819, is very much in the nature of a judgment; and a purchaser can as readily search for and find one of record as the other, and, therefore, there is as little reason to dispense with the one as the other. The legislature meant to give the citizens an effectual protection against surprise in the sale of their land for taxes, but, at the same time, to do so without exposing bidders to the danger of paying their money and not getting the benefit of their purchases, provided they would take the reasonable and not inconvenient precaution of availing themselves of the means here provided for informing themselves, whether the sheriff had aright to sell or not. No person can be hurt by this construction, but one who wilfully keeps his eyes shut against the light the law supplies to him. We think the sale to the lessors of the plaintiff was, therefore, radically defective, and passed no title.
 

 Per OtjRiam, Judgment reversed and
 
 venire de novo.