GEORGE W. HARRIS v. W. D. HARRIS ET ALS., HEIRS OF W. S. HARRIS.

(Filed 10 September, 1919.)

1. **Trusts—Evidence—Deceased Persons—Parol Trusts—Resulting Trusts.**

Testimony of a witness, disinterested in the result of the suit, that defendant's ancestor, under whom the plaintiff claims the land in controversy, told the witness, while the deceased and the plaintiff were together, that the land had been bought by himself and plaintiff, that each owned one-half, etc., is sufficient for the jury to find a resulting trust in plaintiff's favor under a deed taking title to the deceased alone, and not objectionable as a transaction or communication with a deceased person, forbidden by the statute.

2. **Trusts—Parol Trusts—Deceased Persons—Evidence—Objections and Exceptions—Appeal and Error.**

In a suit to establish a resulting trust in lands under a deed conveying title to the deceased, under whom defendant claims, an exception to the plaintiff's testimony on the ground of being objectionable as a transaction or communication with a deceased person must show, on appeal, when objection was made, such a transaction or communication as is prohibited by the statute, and his testimony, "We bought the land," etc., does not constitute reversible error when a part only of the testimony, the other part of which is competent and not separated, and made the sole ground of the exception.

3. **Statutes—Deceased Persons—Evidence—Witnesses—Interest in Result.**

A witness who has never claimed and who has no interest in the title to lands, the subject of a suit to establish a resulting trust therein, under a deed to the defendant's deceased ancestor, has no interest in the result of the suit, and is not disqualified under our statute to testify as to transactions or communications with a deceased person.

4. **Trusts—Parol Trusts—Resulting Trusts—Evidence—Presumptions—Instructions.**

Where there is evidence that the defendant's deceased ancestor, under whom he claims land, the subject of a suit to establish a resulting trust

by parol, acquired the title with one-half of the purchase money paid to him by the plaintiff, the presumption is, nothing else appearing, that he acquired the title for himself and the plaintiff in equal interest, and where the form of the issue calls for a finding as to the intention of the parties in that respect, a charge of the court that the jury must find from the evidence, clear, cogent and convincing, that the plaintiff not only furnished one-half of the purchase money, but that the deceased acquired the title to be held, as to one-half, in trust for plaintiff, is not objectionable as excluding from the consideration of the jury, when the charge is read as a whole, the intention to create a trust. *Summers v. Moore*, 113 N. C., 394, cited and applied.

5. **Instructions — Interpretation — Fragmentary Parts — Jurors—Presumptions.**

A charge of the court to the jury must be naturally and reasonably construed as a whole, giving effect to every essential part of it, and not disconnectedly, and upon the assumption that the jurors are men of understanding and intelligence.

ACTION tried before *Devin, J.*, and a jury, at May Term, 1919, of HYDE.

Plaintiff sought to have established a resulting trust as to one undivided interest in a tract of land, which he alleges was purchased by him and his brother, W. S. Harris, the deed having been made to the latter for their joint benefit, and that he paid one-half of the purchase money.

The jury found for the plaintiff upon the following issues:

1. Was half of the purchase money expended in buying the McGowan land described in the complaint, furnished by plaintiff, George W. Harris, and did Sanford Harris take a title to same to hold one-half interest in same in trust for the benefit of George W. Harris, as alleged? Answer: "Yes."

2. Is plaintiff, George W. Harris, owner of one-half of the fund on deposit in the Bank of Hyde to credit of Sanford Harris at the time of his death? Answer: "Yes."

Judgment was entered for the plaintiff, and defendant appealed.

*Ward & Grimes for plaintiff.*
*Spencer & Spencer, S. S. Mann and John G. Tooly for defendants.*

WALKER, J., after stating the case: There was sufficient evidence of the trust, apart from the following testimony of Gray Credle: "I worked with the two Harrises, Mr. Sanford and George. I know the McGowan land and the homestead, know when they bought it. I cut the ditch for him. They cleaned the ditch off and hired me to cut it. Mr. Sanford set along the ditch bank and told me this is the land I

and brother George bought, one-half is his and the other is mine. He was talking about the McGowan land. I cut the ditches for them and they cleared up the land crops. They hauled them and put them in one barn. I cut the ditch on the land that Mr. Sanford Harris said he and Mr. George bought. Mr. Sanford Harris told me because I was doing the ditching for him. The old man handed me the money for cutting the ditch—Mr. Sanford Harris; I don't know whose money it was; one spoke at the time, and they were both together. Mr. George Harris and Mr. Sanford said they had a ditch for me to cut."

There are exceptions to evidence upon the ground that certain answers of the plaintiff, as his own witness, related to transactions and communications with his deceased brother, W. S. Harris. The testimony covered by the exceptions 1 and 2 did not show, on its face, such a transaction or communication. The testimony of Richard Howard, afterwards given, does not show its incompetency under Revisal, sec. 1631, when properly considered. If there was a transaction or communication between plaintiff and the deceased it should have appeared to be so when the objection was made, so that the court could rule intelligently upon it. As we view it, the testimony was admissible. The exception which refers to the use of the word "we" in the sentence, "It was before *we* bought the next spring," must be overruled, because that sentence is a part of a mass of testimony, some of which was plainly competent, and the particular sentence was not separated from the rest of the statement and made the sole ground of exception. *S. v. Ledford,* 133 N. C., 714, and *Nance v. Telegraph Co.,* 177 N. C., 313, where the cases are collected. *Stocks v. Cannon,* 139 N. C., 60, does not apply.

We do not see how Jesse Harris was interested in the result of this action (*Brown v. Adams,* 174 N. C., 496), or how his interest, or any he ever had, could be affected favorably by his testimony. The facts seem to show, on the contrary, that his testimony was, in one aspect of the case, unfavorable to himself, and therefore he was not disqualified. *Bunn v. Todd,* 107 N. C., 266. Plaintiff derives his title or interest to the property in dispute under the agreement between him and his brother, W. Sanford Harris, and not under the witness. *Bunn v. Todd, supra; Mull v. Martin,* 85 N. C., 406. There are other answers to the objections not necessary to be considered.

Upon the question of nonsuit we are of the opinion that there was evidence as to the trust for the consideration of the jury. Among other testimony we may refer to that of Gray Credle, which seems to be not only some evidence, but very full and sufficient evidence, of the trust.

We do not agree with the learned counsel that the judge excluded from the consideration of the jury the intention to create a trust, in favor of the plaintiff, as to one-half interest in the land. The form of

the issue called for a finding as to this intention, and we also think that the charge includes it as an element of the equity, which is sought to be established by the plaintiff. The jury say that one-half of the purchase money was furnished by the plaintiff, and that Sanford Harris acquired the legal title in trust to hold one-half interest in the land for his benefit. This is sufficiently clear as to the intention of the parties.

The court charged substantially that the jury must find from evidence, which is clear, cogent and convincing, that George Harris, the plaintiff, not only furnished one-half of the purchase money, but that Sanford Harris acquired the title, which was to be held, as to one-half interest in the land, in trust for the plaintiff.

Bispham on Equity (9 Ed.), sec. 80, states that resulting trusts are substantially divided into four classes. It is then said that the nature of resulting trusts of the first of these classes, that is, where one pays the purchase money but takes the title in the name of another, was clearly explained by *Lord Chief Baron Eyre* in *Dyer v. Dyer,* 2 Cox, 92 (1 Lead. Cases in Eq., 4 Eng. Ed., 165, 203), it being there held, as the clear result of all the cases, without a single exception, that the trust of a legal estate, whether freehold, copyhold, or leasehold; whether taken in the names of the purchaser and others jointly, or in the names of others without that of the purchaser; whether in one name or several; whether jointly or successively, results to the man who advances the purchase money. To illustrate the doctrine thus stated, suppose A. advances the purchase money of an estate, and a conveyance of the legal interest in it is made either to B. or to B. and C., or to A., B. and C. jointly, or to A., B. and C. successively. In all these cases, if B. and C. are strangers, a trust will result in favor of A. "The reason of this doctrine is that the man who pays the purchase money is supposed to become, or to intend to become, the owner of the property, and the beneficial title follows that supposed intention. This doctrine is an analogy to the common-law rule that where there is a feoffment without consideration the use will result to the feoffor. It applies to both realty and personalty, and trusts of this nature are expressly excepted out of the statute of frauds. The person in whose favor a trust is claimed to result must pay the purchase money as his own; if he merely advances it as a loan, no trust will result. Where money is advanced and there is nothing more in the transaction than is implied from the violation of a parol agreement, equity will not decree the purchaser a trustee. A resulting trust of this kind must arise, if at all, from the payment of the purchase money at the time of the conveyance. If the purchase money is paid by several, and the title taken in the name of one, a trust will result to the others in proportion to the amount paid by each. But to create a resulting trust in such a case the payment must be of some defi-

nite part of the purchase money." The annotator of this text cites, in its support, *Summers v. Moore,* 113 N. C., 394 (op. by *Shepherd, Ch. J.*), which states the doctrine in substantially similar language. The rule is well stated in the first two head-notes as follows:

"1. Where, upon a purchase of property, the conveyance of the legal title is taken in the name of one person, while the consideration is given or paid by another at the same time or previously, and as part of the same transaction, the parties being strangers to each other, the presumption, in the absence of rebutting circumstances, is that he who supplies the money intends the purchase for his own benefit and not for another, and that the conveyance in the name of the other is a matter of convenience and arrangement for collateral purposes, and a resulting trust immediately arises from the transaction, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds.

"2. In such case the burden is upon him who claims the resulting trust, and as the law gives a peculiar force and solemnity to deeds, it will not allow them to be overthrown by mere words but only by facts strong, clear and unequivocal."

It will be perceived from this statement of the law that the trust is based upon the presumed intention of the party arising from the payment of the purchase money or his share of it, and the court in this case substantially followed the rule in its charge to the jury.

There was ample evidence to show a contribution to one-half of the purchase money, and also evidence from which the jury could reasonably infer that Sanford Harris had bought the land in trust to hold, as to one-half interest therein, for the plaintiff. This evidence consisted, in part, of his own declarations or admissions tending to prove such a transaction before the purchase, or such an intention of the parties at the time, that he should hold the title, not for himself as the sole owner of the land, but for their joint and equal benefit, and the judge evidently referred to this evidence when he gave the instruction as to what would constitute such a trust, and as to the quantum of proof. The charge must be read as a whole, giving effect to every essential part of it, and not disconnectedly; it must have a natural and reasonable construction, and should be considered upon the supposition that the jurors are men of understanding and intelligence. *S. v. Exum,* 138 N. C., 599; *Kornegay v. R. R.,* 154 N. C., 389, and *Bradley v. Mfg. Co.,* 177 N. C., 153, citing other cases.

The other exceptions are either formal or without merit.

No error.