H. M. BOWEN AND WIFE, BESSIE RAY BOWEN; J. W. BOWEN AND WIFE, VERNA V. BOWEN; JOHN A. BOWEN AND WIFE, ANNIE MAY BOWEN; J. L. BOWEN AND WIFE, RUBY BOWEN; FANNIE MAE BOWEN HINES (WIDOW); T. A. BOWEN AND WIFE, LIZZIE MAE BOWEN; MACK BOWEN AND WIFE, CLARA BOWEN; D. G. BOWEN AND WIFE, EDITH BOWEN, AND PAULINE BOWEN v. HILDRED BOWEN DARDEN AND HUSBAND, GEORGE H. DARDEN, JR.; FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF GREENVILLE, NORTH CAROLINA, A CORPORATION, AND A. C. TADLOCK, TRUSTEE.

(Filed 3 November, 1954.)

**1. Trusts § 3a—**

An express trust, as distinguished from a trust by operation of law, is based upon a direct declaration or expression of intention, usually embodied in a contract.

**2. Trusts §§ 4a, 5a—**

A trust by operation of law is raised by rule or presumption of law based on acts or conduct, rather than on direct expression of intention.

**3. Trusts § 4a—**

The creation of a resulting trust involves the application of the doctrine that valuable consideration rather than legal title determines the equitable title resulting from a transaction. In such instance the law presumes or supposes the intention to create a trust.

**4. Trusts § 5a—**

A constructive trust ordinarily arises out of the existence of fraud, actual or presumptive, usually involving the violation of a confidential or fiduciary relation, and arises not only independent of any actual or presumed intention, but usually, contrary to the actual intention of the trustee.

**5. Trusts § 4c—**

In pleading a resulting trust it suffices to allege the ultimate facts as to who paid the consideration and to whom the conveyance was made.

**6. Same—**

Evidence of a conveyance to one person upon consideration furnished by another is ordinarily sufficient to make out a *prima facie* case for the jury in an action to establish a resulting trust.

**7. Same—**

Where a conveyance is made to a child on consideration moving from a parent, nothing else appearing, there is a rebuttable presumption that a gift or advancement was intended by the parent, and, in order for equity to declare the child a trustee of a resulting trust in such instance, there must be evidence sufficient to justify the inference that the parent had no intention of making a gift or advancement.

**8. Same—**

The evidence must be clear, strong, and convincing to establish a resulting trust.

**9. Same—**

Upon a motion to nonsuit in an action to establish a resulting trust, it is the function of the court to determine only whether there is any substantial evidence to support the plaintiff's case, it being the function of the jury upon proper instructions to decide whether the evidence establishes plaintiff's cause by clear, strong, and convincing proof.

**10. Trial § 21—**

Upon motion to nonsuit in an action in which the burden rests upon the plaintiff to prove his cause by clear, strong, and convincing proof, it is the function of the court to determine only whether there is any substantial evidence to support plaintiff's claim, and it is the function of the jury to determine whether the evidence meets the required intensity of proof.

**11. Trusts § 4c—**

In this action to establish a resulting trust, plaintiffs' evidence to the effect that their ancestor furnished the consideration for the deed to the lands in question, that the conveyance was made to the ancestor for life with remainder to one of her children, and that the ancestor thought the deed was made to her in fee and did not intend to make a gift or advancement of the remainder to the child, *is held* sufficient to overrule defendants' motion for judgment as of nonsuit.

**12. Judgments § 33a—**

A judgment of nonsuit will bar a subsequent action only when it is made to appear that the subsequent action is between the same parties or their privies, on the same cause of action, and upon substantially the same evidence.

**13. Same—**

Nonsuit in an action to establish an interest in land on the theory of a constructive trust will not bar a subsequent action between the parties or their privies in an action based upon the theory of a resulting trust.

**14. Limitation of Actions § 9—**

A resulting or constructive trust, as distinguished from an express trust, is governed by the ten-year and not the three-year statute of limitations. G.S. 1-52 (9) ; G.S. 1-56.

**15. Limitation of Actions § 5d—**

The statute of limitations does not run against a *cestui que trust* in possession.

APPEAL by plaintiffs from *Williams, J.,* at May Term, 1954, of PITT. Civil action to establish a constructive or resulting trust in land.

The land in question, residential property in Greenville, North Carolina, originally belonged to Dr. M. B. Massey. By deed dated 23 October, 1946, Dr. Massey, for a consideration of $21,000, conveyed the land to Mrs. Fannie V. Bowen for life, remainder in fee simple to her daughter, the defendant Hildred Bowen Darden. Mrs. Bowen died intestate 6 December, 1952, being survived by ten children, nine of whom join as plain-

tiffs in this action, alleging that the purchase money was paid by their mother, and that their sister, Hildred Bowen Darden, holds title to the property impressed with a trust in favor of all ten of the children. The action was instituted 24 January, 1953. It is an aftermath of one instituted against the present defendants by Mrs. Fannie V. Bowen during her lifetime, wherein this Court at the Spring Term, 1951, affirmed the judgment as of nonsuit previously entered in the lower court. See *Bowen v. Darden,* 233 N.C. 443, 64 S.E. 2d 285.

Voluminous evidence was offered by both sides. The pertinent part relied on by the plaintiffs is summarized in the opinion.

From judgment as of involuntary nonsuit entered at the conclusion of all the evidence, the plaintiffs appeal, assigning as error the entry of the judgment.

*Jones, Reed & Griffin for plaintiffs, appellants.*

*Blount & Taft, James & Speight, and W. H. Watson for defendants, appellees.*

JOHNSON, J. Trusts are classified in two main divisions: express trusts and trusts by operation of law. The cardinal distinction between the two classes is that an express trust is based upon a direct declaration or expression of intention, usually embodied in a contract; whereas a trust by operation of law is raised by rule or presumption of law based on acts or conduct, rather than on direct expression of intention. *Teachey v. Gurley,* 214 N.C. 288, 199 S.E. 83; 54 Am. Jur., Trusts, sections 186 and 187. See also 65 C.J., p. 220 *et seq.*

In the case at hand we are concerned only with trusts by operation of law. These are classified into resulting trusts and constructive trusts. The essential elements and distinguishing characteristics of these trusts are too well defined and delineated in former decisions of this Court and standard texts to require restatement here. See *Henderson v. Hoke,* 21 N.C. 119, p. 149; *Summers v. Moore,* 113 N.C. 394, 18 S.E. 712; *Avery v. Stewart,* 136 N.C. 426, 48 S.E. 775; *Norton v. McDevit,* 122 N.C. 755, 30 S.E. 24; *Harris v. Harris,* 178 N.C. 7, 100 S.E. 125; *Tire Co. v. Lester,* 190 N.C. 411, 130 S.E. 45; *Speight v. Trust Co.,* 209 N.C. 563, 183 S.E. 734; 54 Am. Jur., Trusts, sections 188, 193, 203, and 218.

It suffices for present purposes to bear in mind these distinguishing factors: that the creation of a resulting trust involves the application of the doctrine that valuable consideration rather than legal title determines the equitable title resulting from a transaction; whereas a constructive trust ordinarily arises out of the existence of fraud, actual or presumptive—usually involving the violation of a confidential or fiduciary relation—in view of which equity transfers the beneficial title to some person

other than the holder of the legal title. Also, a resulting trust involves a presumption or supposition of law of an intention to create a trust; whereas a constructive trust arises independent of any actual or presumed intention of the parties and is usually imposed contrary to the actual intention of the trustee. *Lefkowitz v. Silver,* 182 N.C. 339, pp. 347, 348, 109 S.E. 56; 54 Am. Jur., Trusts, section 188.

Decision here does not require us to determine whether the plaintiffs' allegations and proofs are sufficient to establish a constructive trust. This is so for the reason that our examination of the record leaves the impression that the plaintiff alleged facts sufficient to constitute a resulting trust and that the evidence on which they rely to establish such trust is sufficient to carry the case to the jury.

In pleading a resulting trust it suffices to allege the ultimate facts as to who paid the consideration and to whom the conveyance was made, *Vail v. Stone,* 222 N.C. 431, 23 S.E. 2d 329; 54 Am. Jur., Trusts, section 598; whereas ordinarily the burden of making out a *prima facie* case for the jury is sustained by the introduction of evidence of a conveyance to one person upon consideration furnished by another. *Summers v. Moore, supra; Harris v. Harris, supra;* 54 Am. Jur., Trusts, sections 193, 203, and 662. However, where, as here, the persons seeking to establish a resulting trust allege a conveyance made to a child on consideration moving from a parent, nothing else appearing, the relationship of parent and child gives rise to a rebuttable presumption that a gift or advancement was intended by the parent, and unless and until rebutted by affirmative evidence of a contrary intent, this presumption stays the hand of equity and prevents it from raising a trust in favor of the parent. Accordingly, when the relationship of parent and child obtains, in order to make out a *prima facie* case, the persons seeking to establish the trust must rebut the presumption raised by this relationship by offering evidence sufficient to justify the inference that the parent had no intention to create a gift or advancement. *Creech v. Creech,* 222 N.C. 656, 24 S.E. 2d 642; 54 Am. Jur., Trusts, section 205.

To establish a resulting trust, the rule is that the evidence must be clear, strong, and convincing. However, it is to be kept in mind that it is not the function of the presiding judge to apply this rule in the sense of passing upon the intensity of the proofs. That is a matter solely within the province of the jury. On motion for nonsuit, the question for the presiding judge to determine is whether there is any substantial evidence to support the plaintiff's case. If so, it then becomes the function of the jury, under proper instructions, to decide whether the evidence meets the intensity requirements of the rule. *Wilson v. Williams,* 215 N.C. 407, 2 S.E. 2d 19; *Tire Co. v. Lester, supra; Avery v. Stewart, supra.*

The plaintiffs in their complaint allege in substance: (1) that for a number of years before purchasing the residential property in Greenville the defendants Hildred Bowen Darden and husband, George H. Darden, Jr., had lived in the home of Mrs. Fannie V. Bowen, located on a farm in Pitt County, and had "handled all her business affairs and trans-actions, including the operation of her farm . . ."; (2) that the property in Greenville was purchased with individual funds of Mrs. Bowen, with the defendants Hildred Bowen Darden and husband, George H. Darden, Jr., acting for her and making the "arrangements for the preparation of the deed . . ."; and (3) "that the taking of the title to the property in the name of Fannie V. Bowen for life, remainder in fee to Hildred B. Darden, without the knowledge, consent or acquiescence of Mrs. Bowen . . . constituted Hildred B. Darden the holder of the legal title to the remainder interest in the property in trust for the use and benefit of . . . Fannie V. Bowen, creating . . . a resulting trust," and entitling the plaintiffs to have the defendant Hildred B. Darden decreed the holder of the legal title to the premises in trust for the use and benefit of all the surviving children of Fannie V. Bowen, deceased.

The plaintiffs offered evidence tending to show that for a long period of years before the purchase of the Greenville property the defendants Hildred B. Darden and husband, George H. Darden, Jr., had lived in the home of Mrs. Fannie V. Bowen on her farm in Pitt County and had assisted her in handling her business affairs and transactions, "including operation of the farm, and . . . in making contracts relative to the culti-vation of same . . ."; that prior to October, 1946, the defendant George H. Darden, Jr., had taken over the management and operation of the farm under the direction of Fannie V. Bowen, and from year to year looked after the purchasing of fertilizers, the planting, cultivation, and marketing of crops, and performed other duties incident to the successful operation of the farm.

The further evidence on which the plaintiffs rely includes excerpts from the transcription of the testimony of Mrs. Bowen at the first trial, which may be summarized as follows:

That when Mrs. Bowen went to the law office where the deed was pre-pared, she went with the defendants Darden; that all the purchase money of $21,000 was paid from funds belonging to or borrowed by Mrs. Bowen; that she borrowed from George H. Darden, Jr., $2,300 with which to complete the payment of the purchase price of $21,000; that George H. Darden, Jr., had the deed fixed; that he had it made like he wanted it; that Mrs. Bowen had confidence in him and did not read it; that she was disappointed when she later learned it was written so as to convey the remainder interest to Hildred B. Darden. As Mrs. Bowen put it: "when

I found out it was wrote like it was . . . it hurt me to my heart." She further testified:

"At the time George carried me to the lawyer's office, of course, it was my understanding that I was borrowing the money (the $2,300 portion of the purchase money paid from funds belonging to the defendant George H. Darden, Jr.). I wouldn't have took all that on me to pay (the $21,000 purchase price) and he just pay $2,300."

"BY THE COURT: When you got the deed did you agree with your son-in-law (George Darden) that if you were never able to pay back the $2,300 they (the defendants Darden) could have the place if they stayed and waited on you? A. I never agreed to that. He said, 'You need not hurry about paying me, if you die before it is paid—we are going to stay with you—are you willing for us to have the house?' I said, 'Yes, if you stay with me as long as I live,' and they left. . . . I told them all the time I was going to pay them back. . . . The day that deed was wrote up, George said, 'Miss Fannie, if you never pay me this, if you will leave it to us at your death.' I said, 'I'm going to pay you, but if I never pay it you are welcome to it,' and if they had stayed with me my lifetime and waited on me they would have been welcome. . . . I told him if he and Hildred stayed with me until I died I would leave them the property. I meant by that statement that if I happened to die before I paid him that $2,300. I meant I was going to make a will; I would have made a will if it had been necessary. I tried to do all I could for them. I had not agreed that George and them could have it in any event, whether they stayed with me or not; they had to stay with me my lifetime. (Other evidence discloses that Mrs. Bowen, along with the defendants Darden, moved into the Greenville residence in January, 1947, but that as a result of unhappy family differences the Dardens moved away during or about the year 1950 and did not return.) . . . I reckon it was six months or more before I found out the deed had this provision in it: 'This deed made this the 23rd day of October, 1946, by M. B. Massie and wife to Fannie V. Bowen and Hildred Bowen Darden, for and in consideration of...... .............. , said parties of the first part have bargained, sold and conveyed to Fannie V. Bowen for and during the term of her natural life, then to Hildred B. Darden, her heirs and assigns.' I did not agree that that be put in the deed when I paid my money at Mr. Taft's office, and I did not know that provision was in the deed and did not agree it could be written that way. . . . When I first found out it was in there differently I thought to myself when I paid that money back (the $2,300 of the purchase money she testified she borrowed from the defendant George H. Darden, Jr.) the court would give me a deed. . . . I had great dependence in him (George) and when I found out that deed was wrote like it was, I near 'bout had a heart attack."

The foregoing testimony, and other evidence corroborative thereof, when viewed with the liberality required on motion to nonsuit, is sufficient to justify, though not necessarily to impel, the inferences (1) that when Mrs. Bowen purchased the house and lot she did not intend to make a gift or advancement of the remainder interest to her daughter Hildred B. Darden, and (2) that a trust resulted in favor of Mrs. Bowen. This makes it a case for the jury.

We have not overlooked the defendants' contention that the nonsuit entered below should be sustained under their plea of *res judicata* based on the contention that the judgment in the former action of *Bowen v. Darden* is a bar to the present action. G.S. 1-25. As to this, the rule is that a former judgment of nonsuit is *res judicata* as to a second action when and only when it is made to appear that the second action is between the same parties or their privies, on the same cause of action, and upon substantially the same evidence. *Craver v. Spaugh*, 227 N.C. 129, 41 S.E. 2d 82, and cases there cited. In the case at hand, the plaintiffs have alleged and rested their right of recovery upon the theory of a resulting trust; whereas no such cause of action was alleged in the former case.

Nor is there merit in the defendants' contention that the instant action is barred by the statute of limitations of three years. G.S. 1-52 (9). A resulting or constructive trust, as distinguished from an express trust, is governed by the ten-year statute of limitations. G.S. 1-56. *Jarrett v. Green*, 230 N.C. 104, 52 S.E. 2d 223; *Teachey v. Gurley, supra; Creech v. Creech, supra; Norton v. McDevit, supra*. Moreover, it is established by authoritative decisions of this Court that the statute of limitations does not run against a *cestui que trust* in possession. *McAden v. Palmer*, 140 N.C. 258, 52 S.E. 1034; *Norton v. McDevit, supra; Stith v. McKee*, 87 N.C. 389; *Mask v. Tiller*, 89 N.C. 423. The record discloses that Fannie V. Bowen, under whom the plaintiffs claim, remained in possession of the property until her death in 1952.

Upon the record as presented, the plaintiffs' case appears to be one for the jury. Let the judgment as of nonsuit entered below be

Reversed.