MRS. KATE L. JENKINS v. A. G. MYERS, RECEIVER OF TEXTILES, INC.

(Filed 22 January, 1936.)

**1. Contracts B e—**

Whether conditions of a contract are conditions concurrent, precedent, or subsequent, divisible or entire, must be determined from the intent of the parties as expressed in the instrument.

**2. Cancellation and Rescission of Instruments A e—**

A contract may be rescinded for breach of condition precedent constituting an integral part of the consideration of an entire and indivisible contract.

**3. Same—**

A contract may not be rescinded for breach of a condition precedent unless the breach is material or substantial.

**4. Same—Evidence held to show substantial performance of condition precedent, and plaintiff was not entitled to rescission.**

The uncontradicted evidence tended to show that plaintiff agreed with defendant company to exchange her stock in a certain company for stock of defendant company in order that defendant company might obtain control of such other company, and that at the time of the transfer defendant company represented that with the acquisition of plaintiff's stock defendant company would have fifty-one per cent of the stock of such other company, that at the time of the transfer defendant company did not have fifty-one per cent of the stock of such other company, but had stock and executory contracts for the transfer of stock sufficient to equal this amount, and that about one month after the transfer of the stock by plaintiff, defendant company actually took control of such other company, which control was made definite and certain by the later acquisition of stock under its executory contracts. *Held:* As to plaintiff having knowledge of the situation, the breach by defendant company of its representation that it would acquire fifty-one per cent of the stock of such other company upon the acquisition of plaintiff's stock, was not such a substantial breach as to entitle plaintiff to rescind the contract, since the objective of acquiring control of such other company by defendant company was actually accomplished, and plaintiff was in the same position she would have occupied if the condition had been strictly performed.

APPEAL by defendant from *Alley, J.*, at July Term, 1935, of GASTON.

Plaintiff instituted this action on 3 October, 1934, to rescind contract for the exchange of 300 shares of stock in Flint Manufacturing Company for that of certain shares in Textiles, Inc.

In her complaint she alleges (substantially) that on 2 June, 1931, the directors of Textiles, Inc., by resolution, adopted a plan to acquire all or part of the outstanding capital stock of six named cotton manufacturing corporations (including the Flint Manufacturing Company), by exchange, in certain proportions, of shares of Textiles, Inc., for those of the corporations named; that the plan provided Textiles, Inc., would not acquire any part of the stock of any one of said corporations unless it acquired a majority of the voting stock in such corporation; that the plaintiff, then the owner of 300 shares of the common stock of Flint Manufacturing Company, was approached by Textiles, Inc., for the purpose of procuring her exchange of said 300 shares in accordance with the plan; that Textiles, Inc., through its "duly authorized agent, represented and agreed pursuant to the aforementioned resolution that if plaintiff would transfer her 300 shares in Flint Manufacturing Company to Textiles, Inc., in exchange for stock in Textiles, Inc., as provided in resolution, then Textiles, Inc., would have already acquired, or would at once, and as an integral part of the consideration for the transaction, acquire sufficient shares of stock of Flint Manufacturing Company, including shares to be transferred by plaintiff, to amount to 51 per cent of stock of Flint Manufacturing Company, and thus enable

Textiles, Inc., to control Flint Manufacturing Company." That relying upon said representation and agreement, and with distinct understanding that it was a material, integral, and essential part of the consideration for the transaction that additional stock of Flint Manufacturing Company had been or would immediately be acquired, so that Textiles, Inc., would own at least 51 per cent of the stock, plaintiff, on 15 October, 1931, transferred 300 shares of stock in Flint Manufacturing Company and received therefor a total of 3,374 shares of different classes of stock in Textiles, Inc.

That Textiles, Inc., did not perform its said contract in that it failed to acquire sufficient additional stock to give it ownership of 51 per cent thereof, and thereby defeated a substantial object of the contract; that the acquisition of 51 per cent of stock of Flint Manufacturing Company was an integral part of the consideration for the exchange; that the consideration was entire and indivisible, and failure to obtain and acquire at least 51 per cent of said stock goes to root and essence of the contractual agreement, and is a substantial failure of the consideration upon which the agreement was made; that plaintiff has offered to return, and is still ready, able, and willing to return the shares of stock in Textiles, Inc., and restore the *status quo;* that the stock of Textiles, Inc., is worthless, and she prays that the contract between her and Textiles, Inc., be declared null and void, and that the 300 shares of Flint Manufacturing Company be restored to her.

The defendant in his answer admits the plan for exchange of shares of stock as alleged, and that plaintiff transferred her 300 shares in Flint Manufacturing Company for certain shares in Textiles, Inc., but denies the other allegations with respect thereto; admits plaintiff's offer to return the stock, but denies the shares of stock in Textiles, Inc., are worthless, and avers the shares received by plaintiff are worth more than the 300 shares of Flint Manufacturing Company.

J. H. Separk, a witness for the plaintiff, testified in substance that he was active vice-president and director of Textiles, Inc., and that he was also secretary-treasurer of Flint Manufacturing Company. That as an officer and director of Textiles, Inc., he approached plaintiff for the purpose of securing transfer of her stock in Flint Manufacturing Company and had several conversations with her about it; that she did not agree at first, but in the last conversation she decided she had made up her mind to transfer her stock; that he assumed she thoroughly understood it; that a letter had been sent out setting forth the facts, and plaintiff had received one; that he told her that if they acquired that block of her stock they would then have a majority of the voting stock. Textiles, Inc., did not acquire a majority of the voting stock of Flint Manufacturing Company, but they had agreements to transfer a ma-

jority thereof; that after the acquisition of plaintiff's stock, Textiles, Inc., had a majority of the voting stock of Flint Manufacturing Company if the stockholders of Flint Manufacturing Company, who had agreed to exchange their stock for Textiles, Inc., carried through the exchange; that plaintiff's block of stock, together with the agreements they had, constituted more than a majority of the stock; that assuming these agreements to be legal, binding, and enforceable, he was honest in the thought that these, together with plaintiff's stock, would make 51 per cent; that he attended the stockholders' meeting of Flint Manufacturing Company in 1931, 1932, and 1933, after Textiles, Inc., took charge; that plaintiff was present at at least two of these meetings; that his impression was that Textiles, Inc., voted her 300 shares of stock at all these meetings.

F. C. Roberts, witness for plaintiff, testified that he was secretary and treasurer of Textiles, Inc., and also secretary and assistant treasurer of Flint Manufacturing Company. There were 6,798 shares of voting stock in Flint. On 15 October, 1931, Textiles, Inc., did not have actually transferred a majority of the voting stock of Flint. Only 3,184 shares had been actually transferred on the books, and it would require 3,400 shares to constitute a majority. On said date Textiles, Inc., did have a majority of the voting stock of Flint, if the executed agreements to transfer stock be counted as well as stock actually transferred. These agreements were both signed and witnessed. Textiles, Inc., now owns a majority of the shares of voting stock of Flint Manufacturing Company, and the same have been transferred on the books of the company. The additional shares were transferred since the institution of this suit. Plaintiff has been present at every stockholders' meeting of Flint Manufacturing Company that he had attended.

Plaintiff testified in her own behalf that the terms and conditions under which she agreed to make the exchange were that with the acquisition of her 300 shares of Flint stock, Textiles, Inc., would have 51 per cent of the voting shares of Flint—that was part of the agreement; that she would not have transferred her 300 shares if she had known they had not acquired, with her stock, the majority of the stock of Flint Manufacturing Company; that it was summer of 1933 she first learned Textiles had not acquired a majority of Flint stock. Receiver was appointed for Textiles in the summer of 1933. That she had received the letter from secretary of Flint Manufacturing Company about the proposed exchange of stock and had discussed it with Mr. Separk; that Mr. Separk told her they had enough stockholders of Flint signed up so that when they got her stock they would have 51 per cent; that she understood, of course, they would get this 51 per cent transferred; that she knew the stock was held by a number of people, and that these con-

sents to transfer were signed by a number of people, and that it was necessary to get her stock in order to make a majority; that Mr. Separk did not tell her with whom he had these contracts for transfer; that she probably attended the meeting of stockholders of Flint on 21 October, 1931, after she had transferred her stock. At that meeting Textiles, Inc., took charge of Flint; that her understanding when she went into the meeting was that they had acquired 51 per cent of voting power; that she attended meetings in October, 1932, and October, 1933; that she filed complaint in this suit on 20 October, 1934; that her delay in filing suit was due to a money consideration; that she was conferring with her lawyers, and it took her some time to make up her mind. That at stockholders' meeting in 1932, the stock was voted by Textiles, Inc., without objection; that she thought at the time they had 51 per cent.

Defendant offered in evidence circular letter sent out on 6 July, 1931, by secretary of Flint Manufacturing Company to all the stockholders of Flint (including plaintiff), stating the plan of Textiles, Inc., for exchange of stock, setting forth the advantages thereof in the effecting of economy in administration and distribution of products whereby increased profits might be derived, and recommending that it be accepted by the stockholders. Appended to the letter was a form for the execution of agreement to exchange Flint stock for stock in Textiles, Inc., on the basis proposed by Textiles, Inc., containing provision that such transfer was to be made when called for by Textiles, Inc., and when such exchange should be agreed to by at least 51 per cent of common stockholders of Flint Manufacturing Company.

Defendant's motions for nonsuit at close of plaintiff's evidence, and again at close of all the evidence, were overruled, and defendant, in apt time, excepted.

The following issues were submitted to the jury, who answered each of them "Yes."

1. "Did the plaintiff, in consideration of the transfer of her stock in Textiles, Incorporated, agree to transfer and deliver to said corporation 300 shares of stock in Flint Manufacturing Company upon the agreement, understanding, and condition that the said Textiles, Incorporated, had acquired, or would at once, as an integral part of said transaction, acquire sufficient shares of stock, with voting power, of Flint Manufacturing Company, including the shares to be transferred by the plaintiff, to amount to 51 per cent of the stock, with voting power, of Flint Manufacturing Company to enable Textiles, Incorporated, to control Flint Manufacturing Company, as alleged in the complaint?"

2. "Did the plaintiff perform said contract on her part by the transfer and delivery of said 300 shares of stock to Textiles, Incorporated, as alleged in the complaint?"

3. "Did Textiles, Incorporated, fail to have or at once acquire the amount of stock called for by said contract, as alleged in the complaint?"

From judgment on the verdict requiring defendant to return and restore 300 shares of capital stock of Flint Manufacturing Company to the plaintiff, defendant appealed.

*P. W. Garland and Tillett, Tillett & Kennedy for plaintiff.*
*Geo. B. Mason and Ryburn & Hoey for defendant.*

DEVIN, J.  Plaintiff bases her action for rescission of the executed contract for the exchange of her 300 shares of the common stock of the Flint Manufacturing Company for certain shares of Textiles, Inc., upon the ground that her agreement to do so was dependent upon a condition precedent that Textiles, Inc., had (with plaintiff's stock), or would at once acquire, a majority of the voting stock of Flint Manufacturing Company, and that but for the representation to this effect on the part of Textiles, Inc., she would not have made the exchange, and that upon breach of this condition precedent she is now entitled to rescind the contract and to have her 300 shares in Flint Manufacturing Company restored to her.

Plaintiff's counsel contend in their elaborate and well arranged brief that the representation as to ownership of a majority of the stock of Flint Manufacturing Company was material and important, and constituted an integral part of the transaction, and was a condition precedent, breach of which would entitle plaintiff to a rescission of the contract to exchange the shares of stock.  As illustrating and supporting this proposition, they cite the case of *Meinershagen v. Taylor,* 154 S. W., 886 (Mo.).

In that case shares of stock were purchased on the express agreement that those who formerly controlled the company should not be connected with its reorganization, and upon breach of that condition restoration of the *status quo* was sought.  The court, however, while recognizing the right to rescind under circumstances properly calling for the application of the principle, denied it to the plaintiff in that case because he had failed to promptly repudiate the contract after knowledge of the facts.

There is authority for the position that while a breach of a condition or covenant in a contract is ordinarily not sufficient reason for its rescission in equity in the absence of fraud, mistake, or some other independent ground of equitable relief, there is a distinction between dependent and independent covenants, a dependent covenant being one which goes to the whole consideration of the contract, breach of which would give the injured party the right to rescind.  Black on Rescission and Cancellation, sec. 212.

And in *Huggins v. Daley,* 48 L. R. A., 320, cited by plaintiff, we find the following language: "Where the undertaking on one side is, in terms, a condition to the stipulation on the other (that is, where the contract provides for the performance of some act or the happening of some event, and the obligations of the contract are made to depend on such performance or happening), the conditions are conditions precedent. . . . The nonperformance on one side must go to the entire substance of the contract and to the whole consideration, so that it may safely be inferred as the intent and just construction of the contract that, if the act to be performed on the one side is not done,. there is no consideration for the stipulation on the other side." Citing *New Orleans v. Texas & P. R. Co.,* 171 U. S., 334.

In Black on Rescission and Cancellation, sec. 213, it is stated: "The true rule appears to be that rescission or cancellation may properly be ordered where that which was undertaken to be performed in the future was so essential a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract, or so indispensable a part of what the parties intended that the contract would not have been made with that condition omitted."

However, as stated by *Mr. Justice Clarkson* in *Wade v. Lutterloh,* 196 N. C., 116, "Whether covenants are dependent or independent, and whether they are concurrent on the one hand or precedent and subsequent on the other, depends entirely upon the intention of the parties shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties." Citing Page on Contracts, Vol. 5 (2 Ed.), sec. 2948; *Edgerton v. Taylor,* 184 N. C., 571.

But we do not think the evidence in the instant case is such as to call for the application of these principles or to entitle the plaintiff to rescission.

The facts in the case are in no material respect controverted. The plaintiff's evidence is uncontradicted. And from this it appears, as disclosed by the record before us, that plaintiff agreed to exchange and did exchange her 300 shares of stock in the Flint Company for certain shares of Textiles, Inc., and she did so upon the representation that with the acquisition of her shares, Textiles, Inc., would have 51 per cent of the voting stock of the Flint Company. She testified: "In conversation with Mr. Separk he told me that they had enough people signed up so that when they got my stock they would have 51 per cent. I understood, of course, that they would get this 51 per cent transferred. I knew that the stock was held by a number of people and that these consents to transfer were signed by a number of people, and that it was necessary

to get mine in order to make a majority." In her complaint she alleged that Textiles, Inc., represented if plaintiff would transfer her 300 shares of stock in the Flint Company, it would have already acquired or would at once acquire sufficient shares of the stock to amount to 51 per cent, "and thus enable Textiles, Inc., to control Flint Manufacturing Company."

The record further discloses that plaintiff made the exchange of her shares of stock on 15 October, 1931, and that on 21 October, 1931, Textiles, Inc., took control and management of Flint Manufacturing Company, and has since continued to exercise control thereof. It was in control, through its receiver, when this suit was instituted, and its control had not been at any time disturbed or threatened.

This control has now been made definitely legal and irrevocable by the actual transfer of the shares of stock which were represented by the agreements to transfer held by Textiles, Inc., at the time plaintiff exchanged her shares.

So that, it is apparent the plaintiff is in substantially the same situation she would have been had Textiles, Inc., on 15 October, 1931, had a majority of the voting stock of Flint Manufacturing Company actually transferred on the stock books of that corporation to its name, instead of holding agreements to transfer, for the ultimate purpose contemplated, to wit, the control of Flint Manufacturing Company by Textiles, Inc., became an accomplished fact on 21 October, 1931. And this was followed by subsequent actual transfer of the stock represented by the agreements to Textiles, Inc.

While the possession by Textiles, Inc., of agreements to transfer the stock when called for might not be held to constitute a strict compliance with the representation that it had "acquired" the stock, as these were but executory contracts to exchange the shares, and might not have been good against the *prima facie* title of an assignee of the certificate, or against a subsequent purchaser for value, without notice, who received transfer of stock by delivery of certificate with assignment properly endorsed thereon (*Castelloe v. Jenkins,* 186 N. C., 166); yet, according to her testimony, she understood the situation, and knew that Textiles, Inc., was thus enabled to take and exercise full control over the Flint Manufacturing Company, and that it did so, accomplishing the very purpose contemplated by the exchange of shares.

"The general rule is that rescission will not be permitted for slight or incidental breaches of the contract, but only for such as are material or substantial. *Highway Commission v. Rand,* 195 N. C., 799; *Ice Co. v. Construction Co.,* 194 N. C., 407; *Moss v. Knitting Mills,* 190 N. C., 644.

Though it be conceded the representation as to the acquisition of a majority of the capital stock of Flint Manufacturing Company was a condition precedent to plaintiff's agreement to exchange her shares of stock, and that this was a material and integral part of the consideration, upon the record before us, we reach the conclusion that there has been a substantial compliance with the representation on the part of Textiles, Inc., and that plaintiff has not been disadvantaged or injured by the asserted breach of such covenant.

It does not affirmatively appear in the evidence that plaintiff has suffered loss by the exchange of her 300 shares of Flint Manufacturing Company stock, but presuming that she has, she is in the same case with a majority of the Flint Company stockholders whose action in making the exchange may have been proven by later events to have been unwise, and for a situation thus caused the courts can afford no legal redress.

For the reasons stated, the defendant was entitled to have his motion for nonsuit allowed.

Reversed.