J. P. STRICKLAND v. C. E. BINGHAM, ET UX.

(Filed 19 March, 1947.)

**1. Brokers § 13—**

A party who enters into a contract with a real estate broker to purchase certain lands may not maintain an action against the broker for specific performance upon the later acquisition of title to the lands by the broker, the right of action under the contract being against the owner and not the real estate agent.

**2. Brokers § 5—**

Since it is a matter of common knowledge that a real estate broker is an agent with restricted powers, generally speaking, one who deals with him is held to a knowledge of the extent of the agent's authority.

**3. Trusts § 5b—Defendant may not be declared trustee ex maleficio upon evidence which shows no fiduciary relationship at time he purchased lands.**

A real estate broker had an option giving him exclusive selling rights to a certain tract of land for a specified period. Plaintiff, with knowledge of the agency, entered into a contract with the broker to purchase the lands. In order to aid plaintiff in raising the purchase price, the broker entered into an agreement to sell certain *·choses* in action owned by plaintiff. The broker failed to sell the *choses* in action,· and after his option with the owner expired, purchased the lands himself. *Held:* The agreement to sell the *choses* in action was a separate contract having nò legal effect upon the broker's option. and plaintiff is held to a knowledge of the expiration date of the option, at which time the authority of the broker to sell the *choses* in action for the purpose of effectuating the sale terminated, and therefore at the time of the purchase of the land by the broker no fiduciary relationship existed between him and plaintiff, and plaintiff is not entitled to have the broker declared trustee of a constructive trust on the ground that the broker's failure to sell the *choses* in action was motivated by a fraudulent intent to delay and defeat plaintiff in the purchase of the land.

**4. Contracts § 23—**

Plaintiff's evidence tended to show an agreement by defendant to sell certain notes for not less than a stipulated amount, failure of perform-

ance by defendant, and later independent sale of the notes by plaintiff for an amount less than the price stipulated in the agreement. Plaintiff offered no evidence of want of diligence on the part of defendant or of defendant's ability to sell the notes under the conditions imposed, or of any change in the market value of the notes. *Held:* Defendant's motion to nonsuit was properly allowed.

APPEAL by plaintiff from *Harris, J.,* at November Term, 1946, of JOHNSTON.

The defendant Bingham, described as a realtor, was engaged in the business of buying and selling real estate. From the owner, A. H. Morgan, he had an exclusive option for the purchase and sale of the lands described in the complaint, consisting of a 238.95 acre farm encumbered by a deed of trust to the Prudential Insurance Company, in the sum of $1,750, bearing interest. The defendant and plaintiff entered into an agreement whereby the land was to be conveyed to the plaintiff at the purchase price of $5,000 upon condition that plaintiff assume the indebtedness on the property and pay the balance of the purchase price.

The plaintiff declared himself unable to pay the purchase price at which the land was offered unless he could sell certain mortgage notes held by him on lands in South Carolina, amounting to about $17,000. These notes were hypothecated with the First-Citizens Bank & Trust Company as collateral to a $4,000 loan, were secured by a mortgage subject to a prior mortgage for $600, and were to be paid in installments covering 36 years.

To aid in the transaction the defendant undertook the sale of these notes in behalf of the plaintiff. The plaintiff testified that defendant was to sell the notes at a discount of not more than 20 per cent and apply the proceeds as far as necessary to the purchase price of the land and account to him for the balance. The plaintiff further testified that the indebtedness to defendant in connection with his farming operations, later undertaken, was to be paid out of these notes; and an assignment was made to defendant to secure nearly $2,000 indebtedness. The plaintiff paid $135 on the purchase price (it appears to have been applied to an installment on the Prudential Insurance Company loan) and was let into possession of the land. There he became indebted to the defendant in a substantial sum for mules, equipment and supplies in cultivating the farm. Plaintiff testified that meantime, the notes not having been sold by defendant, he employed Mr. Pool, an attorney at law, to sell them for what he could get for them; and under this authority the notes were sold for $11,250.

Although defendant's option or contract to purchase the land from Morgan had expired, upon demand of Morgan that the transaction be closed, Bingham paid Morgan for the land and took title to himself and wife.

After the Morgan deed was delivered to Bingham, plaintiff, on demand, vacated the property and authorized his attorney, Mr. Pool, to settle with the defendant. The extent of the authority is questioned by plaintiff's testimony in which he says he gave authority only to settle matters concerning the advancements made to him. He testified, however, "After the notes were sold I did not have much money. My attorney was to settle it. Mr. Pool sold the papers for $11,500 and he had full power and authority to make the settlement. He came back and told me he had settled and I told him it was perfectly satisfactory with me."

Further testimony was given by A. H. Morgan, the owner of the land, that he had given Mr. Bingham an exclusive option upon the land, expiring in 1943; that because of a sickness he wanted his business straightened out and that Mr. Bingham paid him for the land and he executed a deed to Bingham and his wife.

At the conclusion of the plaintiff's evidence, the defendant demurred thereto and moved for judgment as of nonsuit. The motion was allowed and judgment entered. Plaintiff appealed.

*Levinson, Pool & Batton for plaintiff, appellant.*
*Wellons & Canaday for defendants, appellees.*

SEAWELL, J. The plaintiff's theory of the case may be understood from his demands for relief; (a) that defendants be adjudged to hold the legal title to the land in trust for the plaintiff and account to him for rentals arising from their unlawful occupancy; (b) that defendants be required to convey the lands in controversy to plaintiff in the specific performance of the contract between the plaintiff and the male defendant Bingham, or, in lieu thereof, pay plaintiff the sum of $5,000 purchase price for the land as damages; (c) that plaintiff recover of the defendant Bingham damages alleged to be suffered by reason of defendant's failure to sell plaintiff's notes as agreed.

If in both *allegata* and *probata* any of these demands could find support, nonsuit would be improper. Passing by the complaint, to which no demurrer was made, we do not find that the evidence was of a character to be submitted to the jury on above demands or any aspect of the case as presented in the record.

Neither the option contract given to Bingham by Morgan, nor the contract between Strickland and Morgan appears in the record, although the curtain is partly lifted by parol evidence. The Court has no desire to reconstruct a Java Man from a piece of jaw bone, but certain assumptions must be made, or inferences drawn from the fragmentary evidence, before the plaintiff can secure even an initial standing in court. The

corollaries cannot be evaded, although they may be embarrassing to recovery.

The plaintiff testified that he knew Bingham to be the agent of Morgan, who owned the land, and dealt with him as such. He, therefore, made no contract with defendant for land then owned by him or thereafter to be acquired by him, but did make only such a contract as a known broker or agent might make in binding his principal to make a conveyance. This was not good for specific performance against Bingham,—gave plaintiff no cause of action against him for specific performance. Such a right, if subsisting at the time, could only be enforced against Morgan, the principal and owner. As a matter of fact, as will be seen later, the Morgan option had long expired.

The trust theory is made to depend on the existence of a fiduciary relation between the plaintiff and the defendant Bingham, when the latter took title, making that act a violation of fiduciary duty, so as to make him *ex maleficio* trustee, or as sometimes said, trustee *de son tort,* for plaintiff in a constructive trust. See, for definitions, *Lefkowitz v. Silver,* 182 N. C., 339, 109 S. E., 56, 23 A. L. R., 1491. The factual situations out of which such a trust may arise are innumerable. The plaintiff's situation fails to follow the pattern in a vital particular: its want of relevancy to the fact of purchase.

The fiduciary relation, it is contended, was brought about by the agreement under which defendant undertook to aid plaintiff in selling the long-term mortgage notes upon which he depended to finance the purchase. As to this, the plaintiff in his testimony charges, but does not attempt to support by evidence, that defendant's failure to sell these notes was motivated by the corrupt intent to delay and defeat him in the purchase of the land.

Since a real estate broker is commonly classed and understood to be an agent with restricted powers, generally speaking, one who deals with him is held to a knowledge of the extent of the agent's authority. 8 Am. Jur., p. 1017, sec. 59; 12 C. J. S., p. 331, sec. 129 (b); *Payne v. Jennings,* 144 Va., 126, 131 S. E., 209; *Seery v. Morris Realty Corp.,* 138 Va., 572, 113 S. E., 869.

In the absence of misrepresentation,—and none is suggested,—the plaintiff must be held to have known that the collection of the notes by Bingham was no part of his purchase contract but was a wholly collateral and incidental agreement to aid plaintiff in the financing of his project. Neither was it an *addendum* to the Morgan option to Bingham.

In so far as it concerned the rights of plaintiff, the contract between him and Bingham, through which the principal, Morgan, might be bound, was provisional and conditioned upon the ability of Strickland to pay the purchase price of the lands, and the actual payment thereof, within the period provided in the Morgan option. Again, in that respect,

the plaintiff is within the rule above stated; his right to purchase expired with the Morgan option upon which it was based, and he is held to a knowledge of that important date. The option expired almost a year before Bingham purchased and took title to the land.

Any obligation on the part of Bingham to sell the notes for plaintiff was necessarily subordinated to the purpose of sale and was coterminous with the authority given under the Morgan option. Hence there was no fiduciary relation existing between them by virtue of that agreement at the date of purchase, if in legal effect there ever had been.

Whatever fault may be attributed to the failure of Bingham to market plaintiff's notes, and whatever liability therefor may have arisen, must have occurred within the period lying between the purchase agreement and the expiration of Bingham's option; and must be considered on its own merits as a separate cause of action. It is only necessary to say that the plaintiff asserts in his evidence that it caused him damage without attempting to support the claim by evidence. There is no evidence that there was any change in the market upon which the notes might have been sold or that the defendant was not diligent in the task that he had undertaken, or that he was able to dispose of the notes under the conditions imposed upon him. The mere fact that another agent, Mr. Pool, after the matter had been taken out of defendant's hands, sold the notes for what he could get, and realized thereupon $11,500, raises no inference of defendant's negligence or bad faith, nor does it afford any measure of plaintiff's loss.

Several of the transactions referred to in the evidence are shown to have occurred after the expiration of the Morgan option. At what time the plaintiff took the sale of the notes out of defendant's hands does not appear. The evidence does disclose the fact, however, that plaintiff, after he had received the proceeds of the notes and was in a position to apply them on the purchase, made no tender of the money to Bingham or any other person, although he now says that he was ready and willing to complete the purchase and pay the money.

Plaintiff's evidence strongly indicates that there was an accord and satisfaction in respect to all the matters growing out of the transaction between him and the defendant through the agency of Mr. Pool, plaintiff's attorney, but upon this we need not pass.

Upon consideration of the whole record, we find no error in allowing the motion to nonsuit. The judgment, therefore, is

Affirmed.