W. F. ELLER v. M. R. ARNOLD, CHARLES B. DOUGLASS AND L. A. BAZAKIS.

(Filed 11 May, 1949.)

**1. Registration § 1: Vendor and Purchaser § 27b: Brokers § 13: Contracts § 26—**

Where an exclusive right to sell property given by the owner to a real estate broker is not registered as required by statute, G.S. 47-18, third parties may deal with the *locus* as if there were no contract, since no notice, however full and formal, will take the place of registration.

**2. Same—**

Plaintiff broker alleged that he had been given exclusive contract to sell certain property, that he secured a prospect, and that thereafter the prospect and another real estate broker entered into an agreement under which the prospect, after the expiration of plaintiff's option, purchased the property through the other broker upon such other broker's agreement to split commission. *Held:* In the absence of allegation that plaintiff's option was registered, the complaint fails to state a cause of action.

**3. Same: Conspiracy § 1—**

Allegations that third persons conspired to deprive plaintiff of his rights under an unregistered option does not state a cause of action against such third persons, since in the absence of registration such third persons have a legal right to deal with the property as if there were no option and an agreement to do a lawful act cannot constitute a wrongful conspiracy.

APPEAL by defendants Charles B. Douglass and L. A. Bazakis from *Harris, J.,* in Chambers 12 February, 1949, of WAKE.

Civil action to recover commissions on sale of land,—heard upon demurrers to the complaint.

Plaintiff alleges in his complaint, in pertinent part: That in Fall of 1947 defendant L. A. Bazakis requested plaintiff to locate for him a duplex house in the city of Raleigh; that in accordance therewith plaintiff showed him the house of M. R. Arnold at No. 2505-7 Fairview Road; that Bazakis indicated interest in purchasing it, provided the price was

satisfactory; that plaintiff secured from M. R. Arnold a price of $22,500,. —his "rock-bottom price" therefor, and reported same to Bazakis, who stated to plaintiff that the price was too high, and if not lowered he was not interested, and was unwilling to purchase at that price; "that at about this time plaintiff secured the exclusive right to sell said house for a period ending June 1, 1948; that as this plaintiff is informed and believes the said Bazakis then called upon Charles B. Douglass and represented to him that plaintiff had the exclusive right to sell said house until June 1st and stated that if the said Douglass would divide his commission of 5% with him that he would purchase the property through Douglass; thereupon, as this plaintiff is informed and believes, the said Douglass and Bazakis entered into an agreement that immediately upon the expiration of plaintiff's option that Bazakis would purchase the house through Douglass, and Douglass would give the sum of $625 or some other large amount out of his commission;

"7. That the said Bazakis and Douglass, well knowing that plaintiff had first shown the house to Bazakis and that he had expended much time and great effort in attempting to sell the said house to Bazakis and that the plaintiff was entitled to the commission of 5% on the purchase price of $22,500, entered into a conspiracy to defraud the plaintiff of his just and earned commission, sealing their bargain with the aforesaid division of the commission and to this end the necessary preliminaries, such as securing a loan and other necessary details were commenced by the said Douglass and Bazakis, while the plaintiff's option was still in force; that by selling the house to Bazakis through Douglass, having possession of the facts as to plaintiff's efforts, Arnold ratified and entered into said conspiracy.

"8. That plaintiff had talked to Arnold several months before the sale by him to Bazakis concerning this matter and Arnold well knew that Bazakis was the client and prospect of plaintiff and that he could not sell this house to Bazakis either directly or through another agent than plaintiff and defraud plaintiff of his commissions; that it was the duty of said Arnold, when he was approached by Douglass and Bazakis, to have informed them that this property could only be sold to Bazakis by the plaintiff as agent. . . .

"9. That, as plaintiff is informed and believes and therefore alleges, the said Arnold could not take advantage of the work and labor of plaintiff in interesting Bazakis in this house, at great trouble and expense to plaintiff, and then sell the same through another agent . . .

"9½. That on or about the .  .... day of ..... ........1948, the said house and lot was sold by M. R. Arnold and wife to L. A. Bazakis for the sum of $22,500; that Charles B. Douglass was the real estate broker in said transaction.

"10. That the defendants are indebted to plaintiff in the sum of $1,125, the same being 5% upon the sum of $22,500, said sum of 5% of the purchase price having been agreed upon between plaintiff and M. R. Arnold."

Defendants, separately and individually, demurred to the complaint for that (1) it does not state a cause of action as to each defendant, and (2) there is a misjoinder of parties defendant.

In respect to the first ground, defendants Douglass and Bazakis point out in their respective demurrers, in substantial accord, that the complaint fails to allege: (1) Any contract between plaintiff and either of them; (2) that plaintiff at any time secured a purchaser ready, able and willing to buy said property; and (3) that either defendant, acting jointly with other defendants, or either of them, in any manner hindered or prevented plaintiff from carrying out and performing the conditions of the alleged exclusive sales contract. And the defendant Douglass further points to the failure of the complaint to allege that the exclusive sales contract was registered in the office of the register of deeds for Wake County as required by law in such cases.

The court overruled each demurrer, and allowed to defendants time in which to file pleadings.

The defendants, and each of them gave notice of appeal to Supreme Court. Defendant M. R. Arnold has not perfected his appeal. The other defendants assign error.

*John W. Hinsdale for plaintiff, appellee.*

*Howard E. Manning for Charles B. Douglass, appellant.*

*Brassfield & Maupin and J. Russell Nipper for L. A. Bazakis, appellant.*

WINBORNE, J. The question here is this: Does the complaint state facts sufficient to constitute a cause of action against defendants Douglass and Bazakis, or either of them? In the light of applicable principles of law in effect in this State, and considering as true the allegations of fact alleged in the complaint, we hold that the question must be answered in the negative.

It is noted at the outset that plaintiff does not allege that he had a contract with either defendant Douglass or defendant Bazakis. But it is alleged in effect that the defendants conspired to defraud plaintiff of his commissions, that is, that they unlawfully interfered with his contract with defendant Arnold. In this connection, accepting as true the allegation that plaintiff secured from defendant Arnold the exclusive right to sell the house in question for a definite period, the agreement therefor would not be effective as against purchasers for value unless it were registered as required by statute, G.S. 47-18, the Connor Act of 1885, Chapter

147, later C.S. 3309. See also *Bruton v. Smith,* 225 N.C. 584, 36 S.E. 2d 9, and compare *Winston v. Lumber Co.,* 227 N.C. 339, 42 S.E. 2d 218.

The Connor Act, G.S. 47-18, provides, among other things, that no contract to convey land shall be valid to pass any property as against purchasers for a valuable consideration, from the bargainor, "but from the registration thereof within the county where the land lies . . ." This act protects purchasers for value against an unregistered contract to convey land, that is, where an owner of land contracts to convey land, such contract, until registered in the county where the land lies, is ineffective as against any who purchases for value from him. *Durham v. Pollard,* 219 N.C. 750, 14 S.E. 2d 818, and cases cited.

Applying the statute, the Connor Act, the decisions of this Court are uniform in holding that no notice however full and formal will take the place of registration. Among the cases so holding are these: *Wood v. Tinsley,* 138 N.C. 507, 51 S.E. 59; *Smith v. Fuller,* 152 N.C. 7, 67 S.E. 261; *Wood v. Lewey,* 153 N.C. 401, 69 S.E. 268; *Eaton v. Doub,* 190 N.C. 14, 128 S.E. 494; *Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197; *Grimes v. Guion,* 220 N.C. 676, 18 S.E. 2d 170.

And, while in this State an action will lie against a person who, otherwise than in a legitimate exercise of his own rights, procures the breach of a contract, *Elvington v. Shingle Co.,* 191 N.C. 515, 132 S.E. 274, the principle does not apply in respect to an unregistered contract to convey land. *Bruton v. Smith, supra.* However, if the contract be registered as required by law, it does apply. *Winston v. Lumber Co., supra.* In the *Bruton case,* this Court held that the failure of the plaintiff to have his contract to convey land registered in the public registry left the appealing defendant free to purchase without incurring any liability to plaintiff. And in the *Winston case,* the Court, holding that standing timber is a part of the realty, stated: "Where there is a duly registered contract to sell and convey timber, any interference with the relation and rights created thereby is a violation of a legal right recognized by law . . . for which an action will lie for the recovery of compensatory damages." Thus the line of demarcation as to liability for interference with contracts to convey land is distinctly drawn. That is, until such contract is registered, third parties may deal with the property to which it relates as if no contract existed.

Moreover, this Court treating the subject of a conspiracy, in the case of *S. v. Martin,* 191 N.C. 404, 132 S.E. 16, adopted this quotation from *Ballentine v. Cummings,* 70 Atl. 548, "Whether it is a wrongful or illegal conspiracy depends not upon the name given by the pleader, but upon the quality of the acts charged to have been committed. If these acts are not wrongful or illegal, no agreement to commit them can properly be called an illegal and wrongful conspiracy." And in *Bell v. Danzer,* 187

N.C. 224, 121 S.E. 448, the Court, quoting from Cooley on Torts, 685, said: " 'The exercise by one of a legal right cannot be made a legal wrong to another.' " See also *Bruton v. Smith, supra.*

Applying these principles to the case in hand, the complaint fails to allege such a state of facts as would put defendants Douglass and Bazakis on legal notice of the existence of the contract, that is, the complaint fails to allege that the contract plaintiff had with Arnold was registered as required by the statute, G.S. 47-18. In the absence of such notice these defendants had the legal right to deal with the property to which the contract relates as if no contract existed. Hence, no cause of action is stated against them.

Other grounds upon which appellants rely need not. be considered.

For reason here stated, the judgment below overruling the demurrers of defendants Douglass and Bazakis is

Reversed.