George F. DARDEN, Jr., Plaintiff,

v.

A. W. HOUTZ, Defendant.

Civ. No. 455.

United States District Court
E. D. North Carolina,
Elizabeth City Division.

Sept. 23, 1964.

262

Oscar Leach, Smith, Leach, Anderson & Dorsett, Raleigh, N. C., William L. Parker, Norfolk, Va., for plaintiff.

John H. Hall, Killian Barwick, Elizabeth City, N. C., for defendant.

LARKINS, District Judge.

## STATEMENT OF THE CASE

This is an action for specific performance of an alleged contract and option between plaintiff and defendant involving approximately 5,500 acres of land in Camden and Currituck Counties, North Carolina.

Plaintiff alleges defendant took title to the property as trustee for the use and benefit of plaintiff.

Defendant denies any contractual relationship with plaintiff and alleges he is a bona fide purchaser of value and is the owner in fee simple of all the lands involved in the controversy.

## FINDINGS OF FACT

1. Notice of Lis Pendens was filed in both Camden and Currituck Counties, North Carolina.

2. Prior to trial, a jury was waived, by consent, and the jurisdiction of the court was admitted.

3. Originally, C. B. Hollowell and Wiley B. Coppersmith, Jr. were named co-defendants with A. W. Houtz; however, the action has been dismissed as to them.

4. The plaintiff George F. Darden, Jr. is a duly licensed and practicing attorney of Virginia Beach, Virginia.

5. The defendant A. W. Houtz is a businessman, engaged as plant manager of a wood products plant in Elizabeth City, North Carolina.

6. C. B. Hollowell and Wiley B. Coppersmith, Jr. are both real estate dealers in Elizabeth City, North Carolina and originally were named as co-defendants with A. W. Houtz.

7. About six (6) months prior to November 23, 1961, C. B. Hollowell acquired an option to purchase approximately 5,500 acres of land lying in both Camden and Currituck Counties, North Carolina from M. H. Jones and others for $60,-000.00 cash, excluding all mineral, gas and oil rights, said option to expire on November 23, 1961.

8. Thereafter, Hollowell assigned one-half interest in said option to Wiley B. Coppersmith, Jr. who became owner of a one-half interest therein.

9. Hollowell and Coppersmith some time later contacted Thos. L. Woodhouse, Jr., a real estate broker at Virginia Beach, Virginia, to engage his services in finding a prospective purchaser for the said 5,500 acres of land.

10. Woodhouse then contacted the plaintiff, George F. Darden, Jr. in July 1961, who became interested in buying 1,300 acres of said tract and in obtaining an option to buy the 4,280 acres remainder.

11. On or about October 14, 1961, Darden prepared two separate agreements which he wanted Hollowell and Coppersmith to sign; and, thereafter he delivered the original and several copies of an agreement bearing the same date to Woodhouse, together with a check for $500.00, with instructions to take the same to Elizabeth City, North Carolina, and obtain the signatures of Hollowell and Coppersmith.

12. On or about October 26, 1961 Woodhouse met Hollowell and Coppersmith in Attorney J. W. Jennette's office in Elizabeth City, North Carolina, where he presented the Darden contract. Attorney Jennette advised his clients Hollowell and Coppersmith not to sign the agreement since it extended well beyond November 23, 1961 the expiration date of the Jones option.

13. Contrary to Attorney Jennette's advice, Hollowell and Coppersmith executed the Darden agreement on October 26, 1961, said contract being in words and figures as follows:

"OFFER TO BUY 1300 ACRES
WITH OPTION TO BUY
ADDITIONAL LAND

TO: C. B. Hollowell and Wiley Coppersmith

I hereby offer to buy 1300 acres of land as designated generally on

the plat hereto attached, said land being on the southeast end of the Jones property near Moyock. The pen line, on the plat, shows the approximate course of the line to separate the property to be purchased from the property on which an option will be taken. The determination of the exact course or courses of the dividing line shall be by mutual agreement and if no agreement can be reached shall be referred to Thos. L. Woodhouse, Jr. whose determination shall be final.

My offer is Twenty-seven Dollars ($27.00) per acre on the 1300 acres, and shall remain open until Friday, November 3, 1961 at 12:00 noon. This offer is subject to the following conditions:

1. That I receive a general warranty deed with the usual covenants of title, except that all mineral rights will be excluded.

2. That payment shall be as follows: $500.00 deposit paid herewith; $34,600.00 at closing.

3. That a policy of insurance as to matters of title and matters of survey may be obtained.

4. That if a 60′ right of way, suitable for road building purposes, in a substantially straight line from the highway to the property in question and southeast of the Guinea Mill Canal is not obtained and included in the transaction, the price is to be reduced by $1000.00. If there is no right of way of at least 40′ in width, suitable for road building purposes, from the property to a highway, I shall have the option not to conclude the transaction.

5. That I receive an option, until July 31, 1962 on the balance of the Jones tract (4280 ac. ±, it being understood that title to 504 ac. ± is in question and may not transferrable by the offeree, but that offeree will use all reasonable diligence to clear title to the said 504 ac. ±) at a price of Twenty-five Dollars ($25.00) per acre (fee simple title; general warranty deed; mineral rights excluded; financing ½ cash and the balance payable in 5 equal yearly principal installments plus interest at 4% per annum on each principal installment as it falls due.)

6. That if the 1300 acres purchase is not consummated and such failure to consummate is not my fault, the costs of title examination and survey shall be borne by the seller.

7. Closing shall be six weeks after acceptance of this offer or as soon thereafter as is reasonable possible under the circumstances.

8. If, within 6 weeks of notification to the sellers of defects as to matters of title or survey, said matters are not corrected, I may elect not to be bound further and if such election is made the $500 deposit will be returned immediately.

WITNESS my hand this 14th day of October, 1961.

(s) George F. Darden, Jr.

George F. Darden, Jr.

It is understood that T. L. Woodhouse, Jr. will receive a 5% commission to be paid by sellers on any and all property conveyed hereunder.

TERMS OF CONTRACT ACCEPTED.

(s) C. B. Hollowell

C. B. Hollowell

(s) Wiley B. Coppersmith, Jr.

W. B. Coppersmith, Jr.

WITNESS:

(s) Betty E. Askew, N. P.″

14. That no part of the $500.00 deposit mentioned in the said contract was paid by Woodhouse to Hollowell or Coppersmith. Woodhouse was to receive a commission on the sale. He claims he kept the $500.00 in escrow until the deal was to be closed.

15. Woodhouse then returned the original of said contract to Darden at Virginia Beach, Virginia, which contained the words, but no date, as follows:

"TERMS OF CONTRACT ACCEPTED.

(s) C. B. Hollowell

C. B. Hollowell

(s) Wiley B. Coppersmith, Jr.

W. B. Coppersmith, Jr.

WITNESS:

(s) Betty E. Askew, N. P."

16. Thereafter, Hollowell contacted Houtz to see if Houtz would help him obtain the balance of the money to acquire the deed from the Joneses. Hollowell exhibited his file and Houtz examined it, but Hollowell did not advise Houtz that he and Coppersmith had executed the Darden agreement, an unsigned copy of which was in the file.

17. Houtz was unable to assist in financing the transaction, after ascertaining that the Joneses would not alter the terms of the option held by Hollowell and Coppersmith, but indicated an interest in purchasing the lands in his own right.

18. On November 21, 1961, Houtz prepared agreement which he presented to Hollowell and Coppersmith in Attorney Jennette's office. Said agreement was executed by Houtz and Hollowell, however, Coppersmith refused to sign it. Said paper writing being in words and figures as follows:

"NORTH CAROLINA
PASQUOTANK COUNTY

"THIS AGREEMENT, made and entered into this 21st day of November, 1961, by and between C. B. Hollowell of the first part and A. W. Houtz of the second part;

WITNESSETH:

"That whereas C. B. Hollowell, realtor, has an option for the purchase of the Marshall and Edwin Jones land in Camden and Currituck Counties, North Carolina for the price of SIXTY THOUSAND ($60,000) DOLLARS, cash, this option expiring at midnight on the 23rd day of November, 1961, and whereas it is understood and agreed that Wiley Coppersmith owns a one-half interest in said option and, whereas, C. B. Hollowell is unable to make payment of the purchase price within the period of said option, and whereas, A. W. Houtz has agreed to take up said option and make payment of the purchase price as therein stipulated,

"Now, therefore, it is understood and agreed as follows:

"A. W. Houtz agrees to make the necessary arrangements, if possible, to provide the money necessary for the exercising of the option and to take title in his, A. W. Houtz's name.

"Upon A. W. Houtz taking title to the property described in the option in his name, upon his making payment to Marshall M. Jones and Edwin Jones of the amount of SIXTY THOUSAND ($60,000) DOLLARS, he agrees to pay to C. B. Hollowell and Wiley Coppersmith each, respectively, TWO THOUSAND ($2,000) DOLLARS in cash, or if they elect to wait until the option which they have given to Charlie Darden shall be exercised, he shall then pay to them TWENTY FIVE HUNDRED ($2,500) DOLLARS, it being understood and agreed that the Darden offer and all other matters relating to the giving of the option to Darden, are to be included as consideration for the above payment to them as hereinabove set out.

"It is further understood that as time is of the essence in making payment to Marshall Jones and Edwin Jones of the option price; that in the event this offer is not accepted by either C. B. Hollowell or Wiley Coppersmith by not later than Wednesday, November 23, 1961, at 4:00 P.M., that in that event the offer made by A. W. Houtz for payment

to them for the assignment of their interests to him shall be reduced to ONE THOUSAND ($1,000) DOLLARS INSTEAD OF TWO THOUSAND ($2,000) DOLLARS or TWENTY FIVE HUNDRED ($2,500) DOLLARS given as an election by them.

"It is also understood and agreed that should Wiley Coppersmith put up one-half of the purchase price or THIRTY THOUSAND ($30,000) DOLLARS in exercising his interest in said option, that in that event he shall own one half in the land with A. W. Houtz and if, in the meantime, deed has been taken in the name of A. W. Houtz, individually, he, A. W. Houtz shall make, execute and deliver to Wiley Coppersmith sufficient security to protect him in his ownership of one-half of the interest in said lands upon which the option is taken.

"IN WITNESS WHEREOF, this agreement has been signed this the day and year first above written by C. B. Hollowell, Wiley Coppersmith and A. W. Houtz.

/s/ C. B. Hollowell (SEAL)
C. B. Hollowell

_____ (SEAL)
Wiley Coppersmith

/s/ A. W. Houtz (SEAL)
A. W. Houtz

_____
Witness
"
_____
Witness

19. Hollowell nor Coppersmith were financially able to take up the Jones option which expired November 23, 1961.

20. On November 24, 1961 Houtz obtained a warranty deed from Marshall H. Jones and others for the entire tract of land, subject to mineral, gas and oil rights therein. C. B. Hollowell, assignor, joined in the execution of said deed to evidence his assignment to A. W. Houtz of the option for said lands previously given him by the Joneses.

21. Wiley B. Coppersmith, Jr. did not join in the execution of said deed.

22. The said deed was executed and delivered to Houtz on December 4, 1961, and subsequently recorded in both Camden and Currituck Counties, North Carolina.

23. The Darden agreement was not recorded, nor was the Houtz contract recorded.

24. Neither Hollowell nor Coppersmith were ever paid any portion of the $500. deposit called for in the Darden paper writing, nor were either of them ever paid any portion of the $2,000. or the $2,500. called for in the Houtz paper.

25. Houtz contacted Darden after he acquired the deed; and, following a conversation concerning the land, Houtz offered Darden the same terms and conditions as Hollowell and Coppersmith had offered him, which was declined. Darden stated Houtz should reduce the price if he was going to hold the lands for six (6) months for tax purposes, as he had indicated, however, no agreement was reached.

26. Darden then disclosed to Houtz for the first time, on December 7, 1961, that he had a written agreement with Hollowell and Coppersmith which he obtained prior to the termination of the Jones's option, and Darden demanded Houtz to convey the lands to him but Houtz became angry and left, and no agreement was reached.

27. Next day, Darden called Houtz and, as a result, submitted to Houtz a letter in words and figures, as follows:

"December 8, 1961

Mr. A. W. Houtz
P. O. Box 225
Elizabeth City, N. C.

Dear Mr. Houtz:

"Confirming our telephone conversation of today, I have briefed my people on our discussion of yesterday. In lieu of the contract which I entered into with Coppersmith and

Hollowell, we are willing to consider the following:

"Plan A

(1) Give us four months to complete our studies on the balance of the property (total acreage, less 1300) and if we determine at that time to go ahead, you would come into a cooperative venture by putting up the balance of the acreage at $17.50 per acre.

(2) We would take title to the 1300 acres in return for $30,000 paid to you at such time as would best suit your convenience. We would take care of the right of way and the real estate agent's commission.

"Plan B

(1) (Same as paragraph (1) of Plan A)

(2) We would take title to the 1300 acres at $25.00 per acre at such time as would best suit your convenience. The 60' right of way and the 5% real estate agent's commission would be your responsibility.

"Kindly let me know your feelings on the foregoing at your earliest convenience.

Very truly yours,

(s) George F. Darden, Jr.
George F. Darden
GFD/sw"

28. Houtz later notified Darden that all negotiations were off and that he was no longer interested in selling the lands.

29. Darden thereupon, in company with Woodhouse, his agent, contacted Houtz and attempted a tender to Houtz of the purchase price for the 1,300 acres as called for in Darden's offer to Hollowell and Coppersmith but Houtz refused to discuss the matter further with Darden.

30. Darden thereafter instituted this action on January 31, 1962 against Houtz, Hollowell and Coppersmith.

## CONCLUSIONS OF LAW

The court has jurisdiction of the subject matter of this action.

■■ The failure of Darden's agent, Woodhouse, to pay the $500.00 deposit called for in the Darden offer of October 14, 1961, to Hollowell or Coppersmith, or both, precludes plaintiff as a matter of law in procuring specific performance of his contract. A plaintiff seeking specific performance of a contract must allege and prove that he has performed his part of the contract. Wilson v. Lineberger, 92 N.C. 547, 551. The alternate recited in Lineberger is not applicable here.

■ It is a well established principle of law in North Carolina that a provision of a contract will not be construed as a condition precedent unless the language of the contract plainly requires such a construction; Harris and Harris Const. Co. v. Crain and Denbo, Inc., 256 N.C. 110, 123 S.E.2d 590 (1962). The plaintiff, through his agent Woodhouse, presented the contract to Hollowell and Coppersmith on the 26th day of October, 1961. Woodhouse was also given a check for $500.00 by Darden, this money being called for in the contract, as follows:

"My offer is Twenty-seven Dollars ($27.00) per acre on the 1300 acres, and shall remain open until Friday, November 3, 1961 at 12:00 noon. This offer is subject to the following conditions:

"1. That I receive a general warranty deed with the usual covenants of title, except that all mineral rights will be excluded.

"2. That payment shall be as follows: $500.00 deposit *paid herewith*; $34,600.00 at closing." (Emphasis added).

■ It would be indeed difficult to avoid construing this clause as anything else but a condition precedent. It is expressly denominated as such, and it is so denominated by the very party who not only drafted the contract, but then failed to perform it. Whether the words are a condition precedent, condition concurrent

or condition subsequent must ultimately be determined from the intent of the parties as expressed in the instrument itself and the instrument may be cancelled due to a breach of the condition precedent; Jenkins v. Myers, 209 N.C. 312, 183 S.E. 529 (1936); Harris, supra. The non-occurrence of the condition precedent prevents the promisee from acquiring rights; Harris, supra. It is undisputed that agent Woodhouse has retained the $500.00 in some form of escrow.

It is argued, however, that there is a promise for a promise in spite of the condition not being fulfilled, but in Lerner Shops of North Carolina v. Rosenthal, 225 N.C. 316, 34 S.E.2d 206, 209 (1945) the court said: "It takes the act of both parties to make a consummated contract; and an option to offer, although unilateral, is, ex necessitate, just as much subject to the law of conditional delivery as any other instrument." The court went on to say that the contract could not be made effective without the performance of the condition precedent as called for.

 Hollowell and Coppersmith did execute the Darden contract however, without receiving the $500.00 as a condition precedent. Plaintiff argues that this amounts to a waiver of the condition; Carrow v. Weston, 247 N.C. 735, 102 S.E. 2d 134 (1958), and Harris, supra. But waiver is based upon an agreement of some sort, express or implied, it must be intended by the party on one side and understood to be so intended by the party on the other; Fetner v. Rocky Mount Marble & Granite Works, 251 N.C. 296, 111 S.E.2d 324 (1959); Harris, supra. It is manifest from the plaintiff's own evidence that he did not intend or understand the $500.00 deposit to be waived. The plaintiff's own agent testified that he was holding the money in some form of escrow, now, at the trial, and that he will continue to do so until the termination of the present dispute. Thus, it would appear that if the party benefiting from a waiver did not consider it waived, the party relying upon the condition precedent would not consider it waived.

The contract upon which the plaintiff bases his action for specific performance fails for want of meeting a condition precedent to the successful execution of this contract.

█ The defendant Houtz made a contract of his own with the two middlemen, Hollowell and Coppersmith. In this contract the defendant recognizes some sort of relation between them and the plaintiff, and the undisputed facts show that defendant telephoned the plaintiff in regards to the former dealings between him and Hollowell and Coppersmith. The plaintiff claims that all of these arrangements of defendant, when taken in toto, created some form of trust for the benefit of plaintiff. In response to this argument, the defendant raises the statute of frauds as a defense; N.C.Gen.Stat. § 22–2; Contract for sale of land; leases.

"All contracts to sell or convey any lands, * * * or any interest in or concerning them, * * * shall be void unless said contract, or some memorandum, or note thereof, be put in writing and signed by the party to be charged therewith, * * *."

The defendant's plea of the statute of frauds is applicable to the facts of this case; that there is no contract or memorandum or note thereof in writing and signed by the defendant or by some other person by him thereto lawfully authorized whereby defendant contracted to sell or convey to the plaintiff 1,300 acres of land or any part thereof, the subject matter of this action, or whereby defendant contracted to give to the plaintiff an option on the remainder of said tract of land, to wit, approximately 4,280 acres.

The plaintiff has failed to show and establish by the preponderance of the evidence any contract or memorandum or note signed by or on behalf of the defendant sufficient to repel defendant's plea of the statute of frauds.

That, to repel defendant's plea of the statute of frauds, the court would have to find by the preponderance of the evidence, inter alia, that defendant had knowledge of plaintiff's offer contained in the Octo-

ber 14, 1961 instrument, its acceptance in writing over the signatures of Hollowell and Coppersmith, and that the assumption of all the foregoing provisions by the defendant are embodied in and incorporated in the instrument of November 21, 1961, being the only instrument in writing signed by or on behalf of the defendant. The court does not so find.

 The defendant committed no fraud in his dealings with the plaintiff in respect to any matters and things the subject matter of this litigation. The essentials of actionable fraud in North Carolina are (1) a false material representation; (2) made with knowledge of its falseness or with a reckless disregard for its truth; (3) with the intention that the other party rely upon the same; and (4) it is reasonably relied and acted upon by the party to his damage. Harding v. Southern Loan & Insurance Co., 218 N.C. 129, 10 S.E.2d 599; Reserve Life Insurance Co. v. North, 4 Cir., 255 F.2d 240, certiorari denied 358 U.S. 874, 79 S.Ct. 114, 3 L.Ed.2d 104; and, Early v. Eley, 243 N.C. 695, 91 S.E.2d 919.

 That plaintiff has failed to prove either separately or collectively by the greater weight of the evidence, or otherwise, the elements necessary to establish a constructive trust, as against the defendant, and has failed to prove by the preponderance of the evidence a constructive trust in his favor with respect to said lands or any part thereof.

 The plaintiff is here seeking the powers of equity in order to obtain the benefits of specific performance, and in order to obtain specific performance it is incumbent upon him to convince the court that it should construct a trust upon the title of real estate now held by the defendant. A constructive trust is a remedial device of equity to prevent the consummation of fraud, or to prevent some other form of unconscionable conduct. It is a trust that arises contrary to the intent of the constructive trustee. The chancellor can not lightly set aside a transaction because in his view the transaction may have been unfair, but

there must have been fraudulent conduct which demands either correction or frustration, and this fraudulent conduct must strike to the root of the transaction. Atkinson v. Atkinson, 225 N.C. 120, 33 S.E. 2d 666 (1945). Thus, it can be said that a constructive trust ordinarily arises out of fraud, constructive or presumptive. Bowen v. Darden, 241 N.C. 11, 84 S.E.2d 289 (1954).

It would seem that in this case, the only way the plaintiff could uphold the allegation of fraud, or some other form of unconscionable conduct would be through the defendant's contract with Hollowell and Coppersmith whereby the plaintiff might say that Hollowell and Coppersmith were induced to refrain from pursuing the purchase of the Jones's lands until their option had expired, thus opening the way for defendant to move in and operate freely. This would be a form of wrongful interference with plaintiff's contract with Hollowell and Coppersmith. It has already been determined that the contract upon which the plaintiff must rely was never consummated due to plaintiff's own failure to meet a condition precedent to its making. Even if it were otherwise, if the contract were given effect, a right of action for the wrongful interference, or for inducing the breach of a contract relating to real property, exists only if the contract is registered. Winston v. Williams & McKeithan Lumber Co., 227 N.C. 339, 42 S.E.2d 218 (1947). There is no allegation or proof that plaintiff's contract was ever registered and if it is not registered, strangers to the contract may deal with the real property as if there was no contract at all. Eller v. Arnold, 230 N.C. 418, 53 S.E.2d 266 (1949).

 If there is any other form of fraud or constructive fraud then the plaintiff has specific burdens placed upon him which he has failed to meet. If his relief was based on actual fraud then he would have to allege and prove all the elements of actual fraud, but he has not done this. Batchelor v. Mitchell, 238 N.C. 351, 78 S.E.2d 240 (1953).

If plaintiff's relief is predicated on the constructive fraud of defendant then he must show that some form of fiduciary relation existed between them before this form of fraud may be implied. In Strickland v. Bingham, 227 N.C. 221, 41 S.E.2d 756 (1947), a customer of a real estate dealer sought to obtain specific performance after the dealer's option had expired and after the dealer had then bought the land in question in his right. The action failed however, because of the plaintiff's failure to take into account the relation of real estate men to their customers as not being a fiduciary one. This lesson would seem to apply to the plaintiff; that Hollowell and Coppersmith were in the deal to make money as real estate men and that plaintiff was relying on them to buy all the land in order that he might buy one portion of it in turn. In order to get all the land the real estate men had to go to another, the defendant, who was outside the arrangements, and defendant could deal freely with the real estate men in trying to make the necessary arrangements for financing or otherwise. The plaintiff may not like the end result, but if his own contractual promisees, Hollowell and Coppersmith, could go on and purchase the land at the expiration of the option as in the Strickland case, supra, it would seem strange indeed for equity to interfere with an arrangement whereby one dealing with the agents obtains the real property after the option has likewise expired, and when there is not registration of the contract. Eller, supra.

The plaintiff does not specify the nature of the trust he seeks to enforce by way of this action for specific performance and it therefore seems appropriate to comment briefly on the possibility of a parol trust. The plaintiff has a high burden to maintain when he seeks to establish a parol trust; he must prove it by clear, strong and convincing evidence. Bowen v. Darden, supra. In this case, the plaintiff has made no real attempt to show that the defendant made any promise to buy the land from the Jones family and retain it in defendant's name for the benefit of plaintiff. The only evidence in this regard indicates that the defendant made plaintiff an offer, but the offer was made after the agreement was made by Houtz with Hollowell and Coppersmith. This was nothing more than an offer from Houtz to Darden. A parol trust arises upon a promise of a grantee to hold in trust for a third party. Atkinson v. Atkinson, supra.

## ORDER

The plaintiff has failed to prove a parol trust in his favor in respect to said lands or any part thereof by evidence clear, strong and convincing, or to any other degree.

The plaintiff has failed to prove by the preponderance of the evidence that he had performed his part of the alleged contract existing between himself and the said Hollowell and Coppersmith, particularly in that the evidence shows affirmatively that plaintiff failed to comply with numbered section (2) of his offer contained in the paper writing of October 14, 1961, reading in pertinent part as follows: "2. That payment shall be as follows: $500 deposit paid herewith."

That there was not a sufficient offer of tender or payment of the purchase price by the plaintiff to the defendant, for that the only offer was to produce and pay by way of certified check or checks the sum of $34,000, whereas the amount involved was in excess of said $34,000. Parks v. Jacobs, 259 N.C. 129, 129 S.E.2d 884.

That the plaintiff has failed to show and establish by the preponderance of the evidence any contract or memorandum or note signed by or on behalf of the defendant sufficient to repel defendant's plea of the statute of frauds.

The court concludes that the plaintiff has failed to maintain his burden of proof and that the defendant is, therefore, not liable in equity or law to the plaintiff for the relief which the plaintiff seeks. Whereupon, after hearing evidence and argument of counsel for the re-

spective parties, and on due consideration thereof;

It is ordered that the defendant's motion to strike portions of the complaint is overruled; and

It is further ordered that the defendant's motion under Rule 41(b), Federal Rules Civil Procedure, for a dismissal be, and the same is hereby allowed.

The foregoing constitutes the court's findings of fact and conclusions of law. Enter judgment in accordance with this opinion.